**MAYER BROWN LLP**
GRAHAM (GRAY) BUCCIGROSS (SBN 234558)
gbuccigross@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:     (650) 331-2000
Facsimile:     (650) 331-2060

A. JOHN P. MANCINI (*pro hac vice* to be filed)
jmancini@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:     (212) 506-2500
Facsimile:     (212) 262-1910

Attorneys for Plaintiffs Blue Bottle Coffee, LLC and
Blue Bottle Coffee, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE BOTTLE COFFEE, LLC, <br><br> and <br><br> BLUE BOTTLE, INC. <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br> HUI CHUAN LIAO, <br><br> and <br><br> SOUTHERN TECHNOLOGIES, LLC, <br><br>　　　　　Defendants. | **CASE NO. 3:21-cv-6083** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTION:** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Blue Bottle Coffee, LLC and Blue Bottle Coffee, Inc. (collectively, "Blue Bottle" or "Plaintiffs"), by its attorneys, Mayer Brown LLP, as and for their Complaint against Defendants Hui Chuan Liao and Southern Technologies, LLC (collectively, "Defendants"), hereby allege as follows based on knowledge of their own actions, and on information and belief as to Defendants' actions (unless indicated otherwise herein):

**PRELIMINARY STATEMENT**

1.      This is an action for federal trademark infringement (15 U.S.C. § 1114), federal unfair competition (15 U.S.C. § 1125(a)), common law unfair competition, violation of the federal Anti-Cybersquatting Consumer Protection Act, violation of California Business & Professions Code § 17200, and unjust enrichment based upon Defendants' willful infringement of Blue Bottle's registered BLUE BOTTLE COFFEE trademarks, trade dress, unfair trade practices, and unjust enrichment.

2.      Particularly, this action arises out of Defendants' operation of a business dedicated to the manufacture, offering for sale, and sale of coffee gear and accessories under the highly similar brand name "BLUE BREW." To promote and sell their coffee gear and accessories, Defendants improperly use BLUE BREW to mislead consumers into believing that its products are endorsed and/or sponsored by Blue Bottle, including by registration and use of the domain name <www.bluebrewcoffee.com> to sell identical and/or highly similar goods to those of Blue Bottle.

3.      Defendants also use a pantone shade of blue that is identical or confusingly similar to Blue Bottle's iconic shade of blue and registered color trademark to promote and sell their BLUE BREW products.

4.      Defendants also registered the name BLUE BREW with the United States Patent and Trademark Office ("USPTO") (the "Infringing Registration" or the "Infringing Mark") on March 3, 2020 (Registration No. 6,002,988). Indeed, Defendants have built an entire business by unlawfully trading off of Blue Bottle's valuable assets and goodwill, which has caused, and continues to cause, irreparable harm to Blue Bottle.

5.      In an attempt to address these matters, Blue Bottle issued multiple letters to Defendants, putting them on notice of their infringing activities, the first of which was issued on October 13, 2020. Since Blue Bottle issued its initial letter, the parties have exchanged communications, and counsel for the parties have spoken about this matter, the infringement issues, and Blue Bottle's demands.

6.      Despite Blue Bottle's requests for Defendants to cease their infringing activities and surrender the Infringing Registration, Defendants have refused to take any actions whatsoever to remediate the issues, and Defendants continue to trade off of Blue Bottle's intellectual property rights and goodwill for commercial gain.

7.      Blue Bottle petitioned to cancel the Infringing Registration by initiating a Cancellation Proceeding before the Trademark Trial and Appeal Board ("TTAB") on October 7, 2020 (Cancellation No. 92075431).

8.      Defendants continue to infringe Blue Bottle's trademarks and trade dress, despite having been put on express notice of their infringing activities over nine (9) months ago. Accordingly, Blue Bottle now brings this action to put an end to Defendants' infringing activities and to cease the ongoing and irreparable harm being suffered by Blue Bottle.

**THE PARTIES**

9.      Plaintiff Blue Bottle Coffee, LLC is a limited liability company organized under the laws of the state of California with its principal place of business at 476 9th Street, Oakland, CA 94607.

10.     Plaintiff Blue Bottle Coffee, Inc. is a corporation organized under the state of Delaware with its principal place of business at 476 9th Street, Oakland, CA 94607.  Blue Bottle Coffee, Inc. is the exclusive licensee of the trademarks and trade dress referenced *infra*.  Blue Bottle Coffee, Inc. is the direct parent holding company of Blue Bottle Coffee, LLC.

11.     On information and belief, Defendant Hui Chuan Liao is a Taiwanese individual with an address of 5925 Mazuela Drive, Oakland, CA 94611.

- 2 -

12.     On information and belief, Defendant Southern Technologies, LLC is an Illinois Limited Liability Company with a principal place of business of 5925 Mazuela Drive, Oakland, CA 94611 and a customer service address of 3816 Hawthorn Ct., Waukegan, IL 60087. On information and belief, Defendant Hui Chuan Liao is the managing member of Southern Technologies, LLC.

## JURISDICTION AND VENUE

13.     This is an action for trademark infringement, trade dress infringement, Anti-Cybersquatting, and unfair competition. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*., California Business & Professions Code § 17200 and California Common law. This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. § 1331, 1338 and 1367 and 15 U.S.C. § 1121.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because, on information and belief, a substantial part of the events giving rise to this action occurred in and continues to occur within this District. Venue is also proper in this Court under 28 U.S.C. § 1391(c), because Defendant Liao resides in this District, has transacted business in this District, and has committed acts of infringement in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.      Blue Bottle and Its Products and Services**

15.     Blue Bottle is a coffee business founded in 2002 in Oakland, California by W. James Freeman. Shortly after it was founded, Blue Bottle expanded to several café locations around the San Francisco Bay Area, including the Ferry Building, and the San Francisco Museum of Modern Art. Today, Blue Bottle operates stores in locations throughout California, New York, Washington, D.C., Boston, Chicago, Seoul, Kyoto, Kobe, Tokyo, Hong Kong, Yokohama, and Jeju.

16.     In addition to its cafés, Blue Bottle is an online purveyor of premium "pour over" coffee, cold brew coffee, pour over coffee makers, filters, coffee pour over kettles, coffee pour over drippers, coffee grinders, carafes, and glasses, and subscription-based coffee services.

- 3 -

17.     Blue Bottle's consistent efforts towards providing premium quality roasted coffee and related products and sustainable growth have made BLUE BOTTLE COFFEE a recognizable brand name among consumers.

18.     Today, BLUE BOTTLE COFFEE products are sold online and also through Blue Bottle's cafés and its consumer packaged goods are sold by well-known retail stores such as Target, Walmart and Whole Foods, and Blue Bottle provides online coffee subscription services and coffee services through its cafés (the "BLUE BOTTLE Products and Services").

19.     Through these concerted efforts, the BLUE BOTTLE COFEE mark and Blue Bottle's iconic blue color mark enjoy significant goodwill and is among Plaintiffs' most valuable commercial assets. Attached hereto as **Exhibit 1** is a true and correct copy of Blue Bottle's website, <www.bluebottlecoffee.com>. *See* **Exh. 1**.

20.     Blue Bottle is a leading innovator in the premium or "third-wave" coffee market and has been offering premium quality coffee and related products and services as far back as 2002. For nearly 20 years, Blue Bottle has invested tens of millions of dollars to promote the Blue Bottle brand in the United States and worldwide.

21.     As a result of these significant investments, the Blue Bottle brand and Blue Bottle's products and services have become widely recognized among consumers in the United States and globally, and consumers in the United States have come to readily identify the BLUE BOTTLE name and the distinctive blue color scheme of Blue Bottle's products and packaging with Blue Bottle. Attached hereto as **Exhibit 2** is a true and correct copy of Blue Bottle's products displayed on <www.amazon.com>. *See* **Exh. 2**.

22.     Blue Bottle's products are sold on its website, <www.bluebottlecoffee.com>, and through other online storefronts, such as <www.amazon.com> and <www.ebay.com>. Attached hereto as **Exhibit 3** is a true and correct copy of Blue Bottle's products displayed on <www.eBay.com>. *See* **Exh. 3**.

23.     Blue Bottle also promotes its products using social media websites, including Facebook, Instagram, YouTube, and Twitter. A true and correct copy of Blue Bottle's Facebook page, <www.facebook.com/bluebottlecoffee.com>, is attached hereto as **Exhibit 4**. *See* **Exh. 4**.

24.     Blue Bottle has a significant presence in California, which is home to its headquarters, forty-six (46) of its cafés, and home of its first flagship location in Oakland, California.

25.     In addition to successful online or e-commerce sales of its coffee products, Blue Bottle operates cafés and maintains a significant brick and mortar presence in California, Massachusetts, Illinois, New York, and Washington, D.C., where Blue Bottle offers its services.

## II.     Blue Bottle's Intellectual Property

### A.     The BLUE BOTTLE Marks

26.     Blue Bottle Coffee, LLC is the current registrant of record at the USPTO for the United States trademark registrations for the BLUE BOTTLE word and design mark noted in Paragraph 29 (together, the "BLUE BOTTLE Marks").

27.     In or about September 2017, Nestlé acquired a controlling interest in Blue Bottle Coffee.

28.     Blue Bottle Coffee, LLC recently assigned the BLUE BOTTLE Marks to Société des Produits Nestlé S.A. ("SPN"), and Blue Bottle is the exclusive licensee to use, exploit, and enforce the BLUE BOTTLE Marks.[1]

29.     The BLUE BOTTLE Marks are as follows:

| Mark | Reg. No. | Registration Date | Int. Cls. |
|---|---|---|---|
| BLUE BOTTLE COFFEE | 4,470,362 (The "'362 Registration") | January 21, 2014 | 35 |
| BLUE BOTTLE COFFEE | 4,678,758 (The "'758 Registration") | January 27, 2015 | 30 |
| BLUE BOTTLE COFFEE | 5,716,136 (The "'136 Registration") | April 2, 2019 | 30 |

---

[1] The assignments from Blue Bottle to SPN will be recorded with the USPTO in due course.

- 5 -

| BLUE BOTTLE COFFEE | 6,125,840 (the "'840 Registration") | August 11, 2020 | 29 |
|---|---|---|---|
| BLUE BOTTLE COFFEE | 6,125,843 (the "'843 Registration") | August 11, 2020 | 40 |
| BLUE BOTTLE COFFEE | 6,125,844 (the "'844 Registration") | August 11, 2020 | 30 |
| BLUE BOTTLE COFFEE | 6,137,423 (The "'423 Registration") | August 25, 2020 | 16 |
| BLUE BOTTLE COFFEE | 6,137,429 (The "'429 Registration") | August 25, 2020 | 18 |
| BLUE BOTTLE COFFEE | 6,137,432 (The "'432 Registration") | August 25, 2020 | 25 |
| BLUE BOTTLE COFFEE | 6,240,631 (The "'631 Registration") | January 5, 2021 | 41 |
| BLUE BOTTLE COFFEE | 6,240,632 (The "'632 Registration") | January 5, 2021 | 43 |
| BLUE BOTTLE COFFEE | 6,301,987 (the "'987 Registration") | March 23, 2021 | 35 |
| BLUE BOTTLE COFFEE | 6,381,000 (The "'000 Registration") | June 8, 2021 | 9 |
| BLUE BOTTLE COFFEE CO | 4,435,134 (The "'134 Registration") | November 19, 2013 | 30, 43 |
|  | 4,268,406 (The "406 Registration") | January 1, 2013 | 30, 43 |

30.     Attached hereto as **Exhibit 5** are true and correct copies of the registration certificates for the '362, '758, '136, '840, '843, '844, '429, '432, '631, '632, '987, '000, '134, and '406 Registrations, respectively.

31.     The '362, '758, '136, '840, '843, '844, '429, '432, '631, '632, '987, '000, '134, and '406 Registrations, respectively, are registered on the Principal Trademark Register. *See* **Exh. 5**.

32.     Because the 362, '758, '136, '840, '843, '844, '429, '432, '631, '632, '987, '000, '134, and '406 Registrations, respectively, are on the Principal Trademark Register, all of the BLUE BOTTLE Marks are *prima facie* valid.

33.     The '362, '758, '134, and '406 Registrations are incontestable within the meaning of 15 U.S.C. § 1065.

34.     Because the 362, '758, '134, and '406 Registrations are incontestable, the BLUE BOTTLE Marks covered by these four Registrations are conclusively valid.

35.     The BLUE BOTTLE Marks are inherently distinctive, as evidenced by the incontestable trademark registrations, and have also acquired distinctiveness, and commercial strength in the United States, through Blue Bottle's exclusive use in commerce for nearly twenty years, robust marketing and promotional efforts, and extensive national customer base.

**B.      The BLUE BOTTLE BLUE Marks**

36.     Blue Bottle, LLC is the current registrant of record at the USPTO for the following United States trademark registrations for its iconic BLUE BOTTLE BLUE Pantone 2995 C color and design marks (together, the "BLUE BOTTLE BLUE Marks").

37.     Blue Bottle recently assigned the BLUE BOTTLE BLUE Marks to SPN, and Blue Bottle is the exclusive licensee to use, exploit, and enforce the BLUE BOTTLE BLUE Marks.[2]

38.     The BLUE BOTTLE BLUE Marks are as follows:

| Mark | Registration No. | Registration Date | Int. Cls. |
|---|---|---|---|
|  | 6,224,868 (The "'868 Registration") | December 22, 2020 | 43 |

---

[2] The assignments from Blue Bottle to SPN will be recorded with the USPTO in due course.

- 7 -

| | 6,224,867 (The "'867 Registration") | December 22, 2020 | 30 |
|---|---|---|---|
|  | | | |

39.     Attached hereto as **Exhibit 6** are true and correct copies of the registration certificates for the '867 and '868 Registrations, respectively.

40.     The '867 and '868 Registrations are registered on the Principal Trademark Register. *See* **Exh. 6**.

41.     Because the '867 and '868 Registrations are registered on the Principal Trademark Register, all of the BLUE BOTTLE BLUE Marks are *prima facie* valid.

42.     The BLUE BOTTLE BLUE Marks are inherently distinctive, and have also acquired distinctiveness, and commercial strength in the United States, through Blue Bottle's exclusive use in commerce, robust marketing and promotional efforts, and extensive national customer base.

43.     For nearly two decades, Blue Bottle has invested (and continues investing) millions of dollars on advertising, marketing, and promoting BLUE BOTTLE Products and Services throughout the world.

44.     In the United States, Blue Bottle's advertising, marketing, and promotional efforts include, for example, Internet advertisements, and social media advertising campaigns touting its small-scale artisanal cafés and direct-to-consumer sales of premium coffee and related products and services. These advertisements and promotional materials consistently feature the BLUE BOTTLE COFFEE name and Blue Bottle's iconic blue color on Blue Bottle's products and in connection with Blue Bottle's services, all of which have become distinctive indicators of source that consumers in the United States have come to associate with Blue Bottle.

45.     BLUE BOTTLE Products and Services offered under the BLUE BOTTLE and BLUE BOTTLE BLUE Marks have enjoyed enormous commercial success throughout the world,

including in the United States. Indeed, tens of millions of dollars' worth of the BLUE BOTTLE Products and Services offered under the BLUE BOTTLE and BLUE BOTTLE BLUE Marks have been sold worldwide, and tens of millions of dollars' worth have been sold in the United States.

46.     Because of Blue Bottle's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of BLUE BOTTLE Products and Services offered under the BLUE BOTTLE and BLUE BOTTLE BLUE Marks, consumers in the United States associate the BLUE BOTTLE and BLUE BOTTLE BLUE Marks uniquely with Blue Bottle and recognize the BLUE BOTTLE and BLUE BOTTLE BLUE Marks as identifying Blue Bottle as the exclusive source of goods and services offered under those marks.

**C.     The BLUE BOTTLE Trade Dress**

47.     One manner in which Blue Bottle advertises, markets, promotes, offers for sale, and sells its BLUE BOTTLE Products and Services is in its product packaging and other related product materials, which features:

(i) the use of the inherently distinctive BLUE BOTTLE Marks throughout its product packaging and other related product materials;

(ii) the pervasive use of the BLUE BOTTLE BLUE color;

(iii) use of the word "Blue" and the words "Blue Bottle";

(iv) a bottle design that is the BLUE BOTTLE BLUE color; and

(v) a consistent overall look and feel that draws association between blue as a color and Blue Bottle as the source of its goods and services (the "BLUE BOTTLE Trade Dress").

(*See*, *e.g.*, Figure 1).

  

**Figure 1**

- 9 -

Source: https://bluebottlecoffee.com/store, 8/6/2021

48.     The BLUE BOTTLE Trade Dress is arbitrary and unique.

49.     The BLUE BOTTLE Trade Dress is purely aesthetic, and serves no functional purpose.

50.     The BLUE BOTTLE Trade Dress maintains a consistent overall look and feel throughout Blue Bottle's line of BLUE BOTTLE Products and Services.

51.     The BLUE BOTTLE Products and Services packaged in the BLUE BOTTLE Trade Dress have enjoyed enormous commercial success throughout the world, including the United States. Indeed, hundreds of millions of dollars' worth of the BLUE BOTTLE Products packaged in the BLUE BOTTLE Trade Dress have been sold worldwide, and tens of millions of dollars' worth have been sold in the United States.

52.     Due to Blue Bottle's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of the BLUE BOTTLE Products packaged in the BLUE BOTTLE Trade Dress, consumers in the United States associate the BLUE BOTTLE Trade Dress uniquely with Blue Bottle and recognize the BLUE BOTTLE Trade Dress as identifying Blue Bottle as the exclusive source of goods packaged in the BLUE BOTTLE Trade Dress.

**III.     Defendants' Unlawful Activities**

53.     On information and belief, Defendants began using the Blue Brew name in or about the year 2017 with the mission of offering "high quality premium coffee gear and accessories." Attached hereto as **Exhibit 7** is a true and correct copy of Blue Brew's website, <www.bluebrewcoffee.com>. *See* **Exh. 7**.

54.     A significant part of Blue Brew's business is dedicated to the manufacture (on information and belief), distribution, offering for sale and sale of coffee related products. Similar to Blue Bottle, Blue Brew's products include pour over coffee makers, filters, coffee pour over kettles, coffee pour over drippers, coffee grinders, carafes, and glasses ("Defendants' Products" or

"BLUE BREW Products"). A true and correct copy of Blue Brew's online store featuring images of the BLUE BREW Products is attached hereto as **Exhibit 8**. *See* **Exh. 8**.

55.     In addition, Blue Brew is improperly using an identical or nearly identical shade of blue to the BLUE BOTTLE BLUE Mark and the word "blue" on its product packaging to advertise and sell its products, including use of the highly similar brand name BLUE BREW. *See* **Exhs. 7-8**.

56.     Defendants federally registered the highly similar mark BLUE BREW with the USPTO in connection with, *inter alia*, "*Coffee; unroasted coffee; coffee grinders, . . . coffee machines, coffee percolators, coffee roasters[,] . . . non-electric coffee drippers for brewing coffee, coffee grinders, coffee services in the nature of tableware, non-electric coffee percolators, kettles, bottles sold empty, pots, teapots.*" The registration for the Infringing Registration claims first-use dates of January 31, 2019 and December 2, 2019. A true and correct copy of the registration certification for the Infringing Registration is attached hereto as **Exhibit 9**. *See* **Exh. 9**.

57.     Blue Brew sells its products through its web site <www.bluebrewcoffee.com> and through other online storefronts, such as <www.amazon.com> and <www.ebay.com>. Blue Brew also promotes its products using social media websites, including Facebook. A true and correct copy of Defendants' Products displayed on <www.amazon.com> is attached hereto as **Exhibit 10**. A true and correct copy of Blue Brew's Facebook page, <www.facebook.com/BlueBrew-265809667474143>, is attached hereto as **Exhibit 11**. *See* **Exhs. 7, 8, 10, 11**.

58.     To promote and sell its coffee products, Blue Brew uses the Infringing Mark in a number of ways that infringe Blue Bottle's trademark and trade dress rights. Pervasively throughout its promotional materials (including, but not limited to, on its website, product packaging, social media pages and Amazon, and eBay listings), Blue Brew uses the confusingly similar Infringing Mark as its primary brand name, with primary prominence and featuring blue packaging and other materials that are identical and/or confusingly similar to the BLUE BOTTLE BLUE Mark. *See*, *e.g.*, **Exhs. 7, 8, 10, 11**.

59.     These unauthorized uses falsely suggest endorsement, sponsorship by and/or affiliation with Blue Bottle. Further, like Blue Bottle, Blue Brew advertising prominently features

specialty "pour-over" style coffee to promote and sell its goods, accompanied by a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks and emphasizes the word "blue" in connection with coffee. *See*, *e.g.*, **Exhs. 7, 8, 10, 11**. These unauthorized uses of the confusingly similar Infringing Mark falsely suggest and/or imply endorsement and/or sponsorship by, and/or affiliation with, Blue Bottle.

60.     Defendants have also branded their products BLUE BREW, which is highly similar to the "Blue Bottle" name and they are using BLUE BREW as the consumer-facing name for their business and website.

61.     In addition to selling highly similar goods and services to Blue Bottle, Blue Brew is highly similar in sight, sound, and meaning to Blue Bottle. First, both begin with the identical distinctive term "blue." Second, both are followed with second similar words, both beginning in the letter "b" causing a similar alliterative effect upon consumers, and creating a similar overall impression. Third, both are accompanied by pervasive use of an identical or nearly identical shade of blue.

62.     On information and belief, Defendants have also registered the domain name <www.bluebrewcoffee.com> (the "Infringing Domain") and are using the Infringing Domain for the BLUE BREW brand's primary website dedicated to promoting and selling the BLUE BREW Products. Defendants have used a privacy service to conceal the registrant details.

63.     Defendants adopted the "BLUE BREW" name and blue color for the BLUE BREW brand to trade off the goodwill of Blue Bottle, and Defendants' use of the BLUE BREW name and chosen blue color is likely to cause confusion among consumers as to the source, sponsorship and/or affiliation of Blue Brew with Blue Bottle.

64.     The likelihood of consumer confusion is particularly heightened due to the fact that Blue Brew is selling pour-over coffee goods that are highly similar to Blue Bottle's coffee goods and advertised and sold through identical channels of trade to the same consumer groups.

65.     In addition, the BLUE BREW Products and packaging that Defendants manufacture (on information and belief), distribute, offer for sale and sell are nearly identical to the BLUE

BOTTLE Trade Dress in terms of size, shape, color, and therefore overall appearance. The Blue Brew product packaging uses a shade of blue that is identical or nearly identical to the registered pantone shade of blue owned by Blue Bottle that consumers have come to readily and exclusively associate with Blue Bottle.

66.     The severity of Blue Brew copying Blue Bottle's use of a distinctive shade of blue on its products, in connection with its services, and in its packaging, and copying the BLUE BOTTLE Trade Dress is demonstrated below, which depicts Defendants' infringing packaging alongside that of Blue Bottle. (*See*, *e.g.*, Figure 2).

| Blue Bottle's Packaging | Blue Brew's Packaging |
|---|---|
|  | |

**Figure 2**

67.     The trade dress that Defendants use for Defendants' Products renders it nearly identical to the BLUE BOTTLE Trade Dress. For example, as shown in Figures 6-10, *supra*, just like the BLUE BOTTLE Trade Dress, the trade dress that Defendants use for Defendants' Products consists of:

(i) the pervasive use of a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks;

(ii) use of the word "Blue"; and

(iii) a confusingly similar overall commercial impression that draws association between blue as a color and the source of its goods (the "Infringing Trade Dress").

68.     Throughout its website and other promotional materials (including, but not limited to, its social media pages), Blue Brew displays the Infringing Mark and Infringing Trade Dress

- 13 -

prominently, likely causing a likelihood of consumer confusion as to the source, sponsorship and/or affiliation of the BLUE BREW Products with Blue Bottle. *See, e.g.,* **Exhs. 7, 8, 10, 11**; Figure 2.

69.     Since its inception, Blue Brew has had constructive knowledge of Blue Bottle's trademark rights in its BLUE BOTTLE COFFEE name and BLUE BOTTLE BLUE color as a result of Blue Bottle's federal trademark registrations.

70.     Blue Brew has also had knowledge of the BLUE BOTTLE Trade Dress based on Blue Bottle's extensive use of the BLUE BOTTLE Trade Dress in commerce. Further, Blue Brew has had actual and definitive notice of Blue Bottle's trademark and trade dress rights since October 13, 2020, when Blue Bottle issued its initial demand letter to Defendant Liao.

71.     Defendants' knowing and intentional infringement of the Blue Bottle Marks and comprehensive copying of the BLUE BOTTLE Trade Dress has been willful, and is likely to cause confusion among consumers as to the source, sponsorship and/or affiliation of Blue Brew's products with Blue Bottle's Products and Services. Further, Defendants' infringing activities have irreparably harmed and continue to irreparably harm Blue Bottle's reputation and the Blue Bottle brand.

72.     After over six months of communications between counsel for Defendants and counsel for Blue Bottle, Defendants continue to infringe the Blue Bottle Marks and the BLUE BOTTLE Trade Dress and have categorically refused to comply with Blue Bottle's demands. Accordingly, Blue Bottle is left with no other option than to file this lawsuit to protect some of its most valuable assets—its brand identifiers.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*

*(Infringement of the Federally Registered BLUE BOTTLE Marks)*

73.     Blue Bottle incorporates the allegations set forth in paragraphs 1 – 73 of the Complaint as though set forth fully herein.

74.     Count I is for federal trademark infringement under 15 U.S.C. § 1114.

75.     Blue Bottle has the exclusive right to use the BLUE BOTTLE Marks in United States commerce for the BLUE BOTTLE Products and Services.

76.     Blue Bottle's exclusive rights in and to the BLUE BOTTLE Marks predate any rights that Defendants could establish in and to any mark that consists of BLUE BREW in whole and/or in part.

77.     As set forth in Paragraphs 29-31, *supra*, the BLUE BOTTLE Marks are registered with the USPTO.

78.     The BLUE BOTTLE Marks are inherently distinctive.

79.     The BLUE BOTTLE Marks have acquired distinctiveness.

80.     Defendants' use of Defendants' Infringing Registration in interstate commerce in connection with its coffee and related products is likely to continue to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of Blue Bottle and/or its goods and services, on the one hand, with Defendants and/or their goods, on the other.

81.     Defendants are using the Infringing Mark to manufacture (on information and belief), distribute, advertise, market, promote, offer for sale, and/or sell Defendants' Products and Services.

82.     Defendants' Products and the BLUE BOTTLE Products and Services appeal to overlapping customer bases, namely, coffee drinkers.

83.     Consumers encounter Defendants' Products and the BLUE BOTTLE Products and Services in overlapping and, in some instances, identical, trade channels.

84.     Blue Bottle has not consented to Defendants' actions.

85.     Based on the federal registrations of the BLUE BOTTLE Marks, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE Marks prior to Defendants' adoption and use of the Infringing Mark, and continues to use the Infringing Mark with actual knowledge of its infringing conduct.

86.     Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its use of the Infringing Mark in interstate commerce, to which Defendants are not entitled at law or in equity.

87.     Upon information and belief, Defendants' acts and conduct complained of herein constitutes trademark infringement of the BLUE BOTTLE Marks under 15 U.S.C. § 1114.

88.     Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

89.     Blue Bottle has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

*(Unfair Competition, False Endorsement, False Association, and False Designation of Origin*

*Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))*

*(Use of the BLUE BOTTLE Marks)*

90.     Blue Bottle incorporates the allegations set forth in paragraphs 1 – 89 of the Complaint as though set forth fully herein.

91.     Count II is for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a).

92.     Blue Bottle has the exclusive right to use the BLUE BOTTLE Marks in United States commerce for the BLUE BOTTLE Products and Services.

93.     Blue Bottle's exclusive rights in and to the BLUE BOTTLE Marks predate rights that Defendants could establish in and to any mark that consists of BLUE BREW in whole and/or in part.

94.     The BLUE BOTTLE Marks are inherently distinctive.

95.     The BLUE BOTTLE Marks have acquired distinctiveness.

96.     Defendants are reproducing and using the Infringing Mark, which are confusingly similar to the BLUE BOTTLE Marks, to manufacture (on information and belief), distribute, advertise, market, promote, offer for sale, and/or sell Defendants' Products.

97.     Defendants' Products and the BLUE BOTTLE Products and Services appeal to overlapping customer bases, namely, coffee drinkers.

98.     Consumers encounter Defendants' Products and the BLUE BOTTLE Products and Services in overlapping and, in some cases, identical, trade channels.

99.     Defendants' use of Defendants' Infringing Mark in interstate commerce in connection with its coffee and related products is likely to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of Blue Bottle and/or its goods and services, on the one hand, with Defendants and/or their goods, on the other.

100.     Blue Bottle has not consented to Defendants' actions.

101.     Based on the federal registrations of the BLUE BOTTLE Marks, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE Marks prior to Defendants' adoption and use of the Infringing Mark, and continue to use the Infringing Mark with actual knowledge of their infringing conduct.

102.     Upon information and belief, Defendants copied, adopted, and/or use the Infringing Mark in interstate commerce in furtherance of Defendants' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of BLUE BOTTLE Products and Services offered under the BLUE BOTTLE Marks in interstate commerce, to which Defendants are not entitled at law or in equity.

103.     Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a).

104.     Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

105.     Blue Bottle has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*

*(Infringement of the Federally Registered BLUE BOTTLE BLUE Marks)*

106.    Blue Bottle incorporates the allegations set forth in paragraphs 1 – 105 of the Complaint as though set forth fully herein.

107.    Count III is for federal trademark infringement under 15 U.S.C. § 1114.

108.    Blue Bottle has the exclusive right to use the BLUE BOTTLE BLUE Marks in United States commerce for the BLUE BOTTLE Products and Services.

109.    Blue Bottle's exclusive rights in and to the BLUE BOTTLE BLUE Marks predate any rights that Defendants could establish in and to any mark that utilizes any shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks in whole and/or in part.

110.    As set forth in Paragraphs 38-40, *supra*, the BLUE BOTTLE BLUE Marks are registered with the USPTO.

111.    The BLUE BOTTLE BLUE Marks are inherently distinctive.

112.    The BLUE BOTTLE BLUE Marks have acquired distinctiveness.

113.    Defendants' use of a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks in interstate commerce in connection with its coffee and related products and services is likely to continue to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of Blue Bottle and/or its goods, on the one hand, and with Defendants and/or their goods and services, on the other.

114.    Defendants are using a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks to manufacture (on information and belief), distribute, advertise, market, promote, offer for sale, and/or sell Defendants' Products.

115.    Defendants' Products and the BLUE BOTTLE Products and Services appeal to overlapping customer bases, namely, coffee drinkers.

116.    Consumers encounter Defendants' Products and the BLUE BOTTLE Products and Services in overlapping and, in some instances, identical, trade channels.

117.    Blue Bottle has not consented to Defendants' actions.

118.    Based on the federal registrations of the BLUE BOTTLE BLUE Marks, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE BLUE Marks prior to Defendants' adoption and use of the Infringing Mark, and continue to use the Infringing Mark with actual knowledge of their infringing conduct.

119.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its use of a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks in interstate commerce, to which Defendants are not entitled at law or in equity.

120.    Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement of the BLUE BOTTLE BLUE Marks under 15 U.S.C. § 1114.

121.    Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

122.    Blue Bottle has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

*(Unfair Competition, False Endorsement, False Association, and False Designation of Origin*

*Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))*

*(Use of the BLUE BOTTLE BLUE Marks)*

123.    Blue Bottle incorporates the allegations set forth in paragraphs 1 – 122 of the Complaint as though set forth fully herein.

124.    Count IV is for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a).

125.    Blue Bottle has the exclusive right to use the BLUE BOTTLE BLUE Marks in United States commerce for the BLUE BOTTLE Products and Services.

126.    Bottle's exclusive rights in and to the BLUE BOTTLE BLUE Marks predate rights that Defendants could establish in and to any mark that utilizes any shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks in whole and/or in part.

127.   The BLUE BOTTLE BLUE Marks are inherently distinctive.

128.   The BLUE BOTTLE BLUE Marks have acquired distinctiveness.

129.   Defendants' use of a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks in interstate commerce in connection with its coffee and related products and services is likely to continue to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of Blue Bottle and/or its goods, on the one hand, with Defendants and/or their goods and services, on the other.

130.   Defendants are using a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks to manufacture (on information and belief), distribute, advertise, market, promote, offer for sale, and/or sell Defendants' Products.

131.   Defendants' Products and the BLUE BOTTLE Products and Services appeal to overlapping customer bases, namely, coffee drinkers.

132.   Consumers encounter Defendants' Products and the BLUE BOTTLE Products and Services in overlapping and, in some instances, identical trade channels.

133.   Blue Bottle has not consented to Defendants' actions.

134.   Based on the federal registrations of the BLUE BOTTLE BLUE Marks, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE BLUE Marks prior to Defendants' adoption and use of the Infringing Mark, and continues to use the Infringing Mark with actual knowledge of its infringing conduct.

135.   Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its use of a shade of blue that is identical or nearly identical to the BLUE BOTTLE BLUE Marks in interstate commerce, to which Defendants are not entitled at law or in equity.

136.   Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a).

- 20 -

137.   Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

138.   Blue Bottle has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**

*(Trademark Cancellation Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201)*

*(BLUE BREW Registration, Reg. No. 6,002,988)*

139.   Blue Bottle incorporates the allegations set forth in paragraphs 1 – 138 of the Complaint as though set forth fully herein.

140.   Count V is for a federal declaratory judgment that the registration of the Infringing Mark, Reg. No. 6,002,988 with the USPTO, must be canceled pursuant to 28 U.S.C. § 2201, 15 U.S.C. §§ 1119 & 1064.

141.   Pursuant to 28 U.S.C. § 2201, the Court may declare the rights, status, or legal rights of interested parties to a trademark infringement dispute when a controversy exists between the parties regarding registered trademarks.

142.   As set forth above, an actual controversy exists among the parties as to the BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks and any marks that are likely to continue to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of Blue Bottle and/or its goods, on the one hand, with Defendants and/or their goods and services, on the other.

143.   Blue Bottle has been damaged and will continue to be damaged by the continued registration of the Infringing Mark.

144.   The BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks are highly distinctive with regard to all of Blue Bottle's goods and services.

145.   The BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks have priority over the Infringing Mark and registration, which claims first use dates and first use in commerce dates for BLUE BREW of January 1, 2019 for its Class 7 goods; December 2, 2019 for its Class 11 goods; January 22, 2019 for its Class 21 goods; and December 2, 2019 for its Class 30 goods.

146.     Blue Bottle's priority over Defendants' Infringing Mark and registration extends to and encompasses mugs, containers, tumblers, coffee drippers, coffee filters, carafes, and coffee kettles, among all of the other goods covered by the BLUE BREW Registration.

147.     Defendants' Infringing Mark set forth in the BLUE BREW Registration creates a similar commercial impression as the BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks.

148.     Defendants' Products and the BLUE BOTTLE Products and Services appeal to overlapping customer bases, namely, coffee drinkers.

149.     Consumers encounter Defendants' Products and the BLUE BOTTLE Products and Services in overlapping and, in some instances, identical, trade channels.

150.     Defendants' use of Defendants' Infringing Mark in interstate commerce in connection with its coffee and related products is likely to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of Blue Bottle and/or its goods and services, on the one hand, with Defendants and/or their goods, on the other.

151.     Specifically, the continued registration of Defendants' Infringing Mark will lead the public to conclude incorrectly that Defendants are or have been affiliated or connected with Blue Bottle, and/or that Defendants' goods provided under the Infringing Mark have been or are authorized, sponsored, endorsed, or licensed by Blue Bottle. The continued registration of the Infringing Mark will result in damage to Blue Bottle and the public. Therefore, the continued registration of Defendants' mark is prohibited by 15 U.S.C. § 1052(d).

152.     Defendants have refused to surrender the BLUE BREW Registration.

153.     There exists an actual, immediate, real, and substantial controversy between the parties having adverse legal interests regarding the continued registration of the Infringing Mark.

154.     For the reasons set forth above, Blue Bottle is entitled to a declaratory judgment that:

a.   Defendants have no ownership, authority, control, rights, title, and/or interest in the Infringing Mark and may exercise no rights in, or utilize in any way, such mark as a source identifier;

b.   Blue Bottle is the sole owner (as exclusive licensee) of the BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks; and

c.   The BLUE BREW Registration must be canceled pursuant to 15 U.S.C. §§ 1119 and 1064.

## SIXTH CLAIM FOR RELIEF

*(Federal Trade-Dress Infringement Under 15 U.S.C. § 1125(a))*

*(Infringement of the BLUE BOTTLE Trade Dress)*

155.   Blue Bottle incorporates the allegations set forth in paragraphs 1 – 154 of the Complaint as though set forth fully herein.

156.   Count VI is for federal trade dress infringement under 15 U.S.C. § 1125(a).

157.   Blue Bottle has the exclusive right to use the BLUE BOTTLE Trade Dress in United States commerce for BLUE BOTTLE Products and Services (including, for example, the BLUE BOTTLE Product packaging).

158.   Blue Bottle's exclusive rights in and to the BLUE BOTTLE Trade Dress predate any rights that Defendants could establish in and to Defendants' Infringing Trade Dress.

159.   The BLUE BOTTLE Trade Dress has acquired distinctiveness.

160.   The BLUE BOTTLE Trade Dress is non-functional.

161.   The BLUE BOTTLE Trade Dress constitutes a symbol or device within the meaning of 15 U.S.C. § 1125(a).

162.   Defendants' Infringing Trade Dress confusingly similar to Blue Bottle's Trade Dress.

163.   Products featuring Defendants' Infringing Trade Dress, and products and services featuring Blue Bottle's Trade Dress, appeal to overlapping customer bases, namely, coffee drinkers.

164. Consumers encounter products featuring Defendants' Infringing Trade Dress, and products and services featuring the BLUE BOTTLE Trade Dress, in overlapping and, in some instances, identical, trade channels.

165. Defendants' use of the Infringing Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing (on information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendants' Products) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are Blue Bottle, and/or that Defendants are a licensee, authorized distributor, and/or affiliate of Blue Bottle and/or products and/or services featuring the Blue Bottle Trade Dress (including, without limitation, the BLUE BOTTLE Products and Services).

166. Defendants' use of the Infringing Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing (on information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendants' Infringing Trade Dress) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that products featuring Defendants' Infringing Trade Dress (including, without limitation, Defendants' Products and Services) originate with, and/or are sponsored or approved by, and/or are offered under a license from, Blue Bottle, or vice versa.

167. Blue Bottle has not consented to Defendants' use(s) of the Infringing Trade Dress for any purpose.

168. Based on Blue Bottle's consistent use of the BLUE BOTTLE Trade Dress, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE Trade Dress prior to Defendants' adoption and use of the Infringing Trade Dress, and Defendants continue using its Infringing Trade Dress with actual knowledge of its infringing conduct.

169. Upon information and belief, Defendants copied, adopted, and/or use the Infringing Trade Dress in interstate commerce in furtherance of Defendants' willful, deliberate, and bad faith

- 24 -

scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of products and services featuring the BLUE BOTTLE Trade Dress (including, without limitation, the Blue Bottle Products and Services).

170.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its use of the Infringing Trade Dress in interstate commerce, to which Defendants are not entitled at law or in equity.

171.    Upon information and belief, Defendants' acts and conduct complained of herein constitute trade-dress infringement in violation of 15 U.S.C. § 1125(a).

172.    Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

173.    Blue Bottle has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF

*(Federal Trademark Dilution Under 15 U.S.C. § 1125(c))*

*(Dilution of the BLUE BOTTLE Marks)*

174.    Blue Bottle incorporates the allegations set forth in paragraphs 1 – 173 of the Complaint as though set forth fully herein.

175.    Count VII is for federal trademark dilution under 15 U.S.C. § 1125(c).

176.    Blue Bottle has the exclusive right to use the BLUE BOTTLE Marks in United States Commerce for the BLUE BOTTLE Products and Services.

177.    Blue Bottle's exclusive rights in and to the BLUE BOTTLE Marks predate any rights that Defendants could establish in and to any mark that consists of BLUE BREW in whole and/or in part.

178.    As set forth in Paragraphs 29-31, *supra*, the BLUE BOTTLE Marks are registered with the USPTO.

179.    The BLUE BOTTLE Marks are inherently distinctive.

180.    The BLUE BOTTLE Marks have acquired distinctiveness.

181.   The BLUE BOTTLE Marks are famous among the general consuming public for BLUE BOTTLE Products and Services.

182.   The BLUE BOTTLE Marks were famous when Defendants began using marks consisting of BLUE BREW in whole and/or in part in interstate commerce on, for, and/or in connection with the manufacturing (upon information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products.

183.   Defendants' use(s) of marks consisting of BLUE BREW in whole and/or in part in interstate commerce on, for, and/or in connection with the manufacturing (upon information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products is likely to dilute the distinctive quality of the famous BLUE BOTTLE Marks, such that famous BLUE BOTTLE Marks' established selling power and value, as well as their ability to exclusively identify Blue Bottle as the source of BLUE BOTTLE Products and Services will be whittled away, and/or likely to dilute the reputation of the famous BLUE BOTTLE Marks, such that famous BLUE BOTTLE Marks' established ability to indicate the superior quality of BLUE BOTTLE Products and Services offered under such Marks (including, without limitation, the BLUE BOTTLE Products and Services), will be whittled away.

184.   Based on the federal registrations of the BLUE BOTTLE Marks, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE Marks prior to Defendants' adoption and use of the Infringing Mark, and continues to use the Infringing Mark with actual knowledge of its infringing conduct.

185.   Upon information and belief, Defendants copied, adopted, and/or use the BLUE BREW Registration in interstate commerce in furtherance of Defendants' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, commercial success, and fame of products offered under the BLUE BOTTLE Marks (including, without limitation, the BLUE BOTTLE Products and Services).

186.   Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its use of a mark that is confusingly similar to the famous BLUE BOTTLE Marks in interstate commerce, to which Defendants are not entitled at law or in equity.

187.   Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

188.   Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

189.   Blue Bottle has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

*(Federal Trademark Dilution Under 15 U.S.C. § 1125(c))*

*(Dilution of the BLUE BOTTLE BLUE Marks)*

190.   Blue Bottle incorporates the allegations set forth in paragraphs 1 – 189 of the Complaint as though set forth fully herein.

191.   Count VIII is for federal trademark dilution under 15 U.S.C. § 1125(c).

192.   Blue Bottle has the exclusive right to use the BLUE BOTTLE BLUE Marks in United States Commerce for the BLUE BOTTLE Products and Services.

193.   Blue Bottle's exclusive rights in and to the BLUE BOTTLE BLUE Marks predate any rights that Defendants could establish in and to any mark that consists of BLUE BREW in whole and/or in part.

194.   As set forth in Paragraphs 38-40, *supra*, the BLUE BOTTLE BLUE Marks are registered with the USPTO.

195.   The BLUE BOTTLE BLUE Marks are inherently distinctive.

196.   The BLUE BOTTLE BLUE Marks have acquired distinctiveness.

197.   The BLUE BOTTLE BLUE Marks are famous among the general consuming public for BLUE BOTTLE Products and Services.

198.   The BLUE BOTTLE BLUE Marks were famous when Defendants began using an identical or nearly identical shade of blue in whole and/or in part in interstate commerce on, for,

and/or in connection with the manufacturing (upon information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products.

199.    Defendants' use(s) of marks consisting of BLUE BREW in whole and/or in part in interstate commerce on, for, and/or in connection with the manufacturing (upon information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products is likely to dilute the distinctive quality of the famous BLUE BOTTLE BLUE Marks, such that famous BLUE BOTTLE BLUE Marks' established selling power and value, as well as their ability to exclusively identify Blue Bottle as the source of BLUE BOTTLE Products and Services will be whittled away, and/or likely to dilute the reputation of the famous BLUE BOTTLE BLUE Marks, such that famous BLUE BOTTLE BLUE Marks' established ability to indicate the superior quality of BLUE BOTTLE Products and Services offered under such Marks (including, without limitation, the BLUE BOTTLE Products and Services), will be whittled away.

200.    Based on the federal registrations of the BLUE BOTTLE BLUE Marks, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE BLUE Marks prior to Defendants' adoption and use of an identical or nearly identical shade of blue, and continues to use an identical or nearly identical shade of blue with actual knowledge of its infringing conduct.

201.    Upon information and belief, Defendants copied, adopted, and/or use the identical or nearly identical shade of blue in interstate commerce in furtherance of Defendants' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, commercial success, and fame of products offered under the BLUE BOTTLE BLUE Marks (including, without limitation, the BLUE BOTTLE Products and Services).

202.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its use of a shade of blue that is identical or nearly identical and therefore confusingly similar to the famous BLUE BOTTLE BLUE Marks in interstate commerce, to which Defendants are not entitled at law or in equity.

203.    Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

204.    Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

205.    Blue Bottle has no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

*(Violation of the Anti-Cybersquatting Consumer Protection Act Under Section 43(a) of the*

*Lanham Act, 15 U.S.C. § 1125(a))*

206.    Blue Bottle incorporates the allegations set forth in paragraphs 1 – 205 of the Complaint as though set forth fully herein.

207.    Count IX is for violation of the federal Anti-Cybersquatting Consumer Protection Act.

208.    Defendants have registered (on information and belief) and are using the domain name <www.bluebrewcoffee.com>, which is highly similar to the BLUE BOTTLE Marks, and is using this domain name in connection with the sale of the BLUE BREW Products in violation of 15 U.S.C. § 1125(d).

209.    Blue Bottle has not consented to Defendants' use of the BLUE BOTTLE Marks or the BLUE BREW Marks that are confusingly similar thereto.

210.    Based on the federal registrations of the BLUE BOTTLE Marks, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE Registration prior to Defendants' adoption and use of the BLUE BREW Registration, including the Infringing Domain, and continue to use the BLUE BREW Registration, including the Infringing Domain, with actual knowledge of its infringing conduct.

211.    Defendants' use of the Infringing Domain is likely to cause confusion among consumers as to the source, sponsorship, affiliation or endorsement of Defendants' website, business, and products, including the BLUE BREW Products.

212.   Upon information and belief, Defendants registered or acquired the Infringing Domain with a bad faith intent to profit, as evidenced by, *inter alia*: (i) their use of the Infringing Domain in willful disregard of Blue Bottle's rights; (ii) their inclusion of descriptions such as leading crafter, innovator, high quality, and premium coffee accessories, which are directly associated with Blue Bottle's business; (iii) their redirection of the Infringing Domain to Defendants' website in a blatant attempt to confuse consumers and direct Blue Bottle's consumers away from Blue Bottle's platform and to Defendants' instead; (iv) Defendants are using the Infringing Domain to perpetuate willful trademark and trade dress infringement; and (v) Defendants' infringing activities are commercial.

213.   The willful and intentional nature and the reckless disregard for the most basic level of diligence by Defendants makes this false designation of origin an exceptional case pursuant to 15 U.S.C. § 1117(a), and, accordingly, Blue Bottle is entitled to an accounting for profits, enhanced profits and damages, actual damages, costs, and reasonable attorneys' fees.

214.   As a result of Defendants' trademark infringement and cyber piracy, Blue Bottle has suffered damages in an amount to be determined at trial.

215.   Upon information and belief, Defendants have gained profits by virtue of their infringement of the BLUE BOTTLE Marks and cyber piracy related thereto.

216.   Defendants' unlawful conduct has caused and is causing great and irreparable harm to Blue Bottle, its business, and goodwill, and unless Defendants are permanently restrained and enjoined by this Court, such irreparable harm will continue.

217.   Blue Bottle lacks an adequate remedy at law and is therefore entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

### TENTH CLAIM FOR RELIEF

*(Federal Trade-Dress Dilution Under 15 U.S.C. § 1125(c))*

*(Dilution of the BLUE BOTTLE Trade Dress)*

218.   Blue Bottle incorporates the allegations set forth in paragraphs 1 – 217 of the Complaint as though set forth fully herein.

- 30 -

219.   Count X is for federal trade-dress dilution under 15 U.S.C. § 1125(c).

220.   Blue Bottle has the exclusive right to use the BLUE BOTTLE Trade Dress in United States commerce for BLUE BOTTLE Products and Services (including, for example, the BLUE BOTTLE Product packaging).

221.   Blue Bottle's exclusive rights in and to the BLUE BOTTLE Trade Dress predate any rights that Defendants could establish in and to Defendants' Infringing Trade Dress.

222.   The BLUE BOTTLE Trade Dress has acquired distinctiveness.

223.   The BLUE BOTTLE Trade Dress is non-functional.

224.   The BLUE BOTTLE Trade Dress is famous among the general consuming public when featured on BLUE BOTTLE Products and Services (including, for example, the BLUE BOTTLE Product packaging).

225.   The BLUE BOTTLE Trade Dress was famous when Defendants began using Defendants' Infringing Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing (upon information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendants' Products).

226.   Defendants' use(s) of Defendants' Infringing Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing (upon information and belief), distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendants' Products) is likely to dilute the distinctive quality of the famous BLUE BOTTLE Trade Dress, such that famous BLUE BOTTLE Trade Dress' established selling power and value, as well as its ability to exclusively identify Blue Bottle as the source of BLUE BOTTLE Products and Services will be whittled away, and/or likely to dilute the reputation of the BLUE BOTTLE Trade Dress, such that famous BLUE BOTTLE Trade Dress' established ability to indicate the superior quality of BLUE BOTTLE Products and Services offered under such Trade Dress (including, without limitation, the BLUE BOTTLE Products and Services), will be whittled away.

227. Blue Bottle has not consented to Defendants' use(s) of the Infringing Trade Dress for any purpose.

228. Based on Blue Bottle's consistent use of the BLUE BOTTLE Trade Dress, Defendants had actual and constructive knowledge of Blue Bottle's superior rights in and to the BLUE BOTTLE Trade Dress prior to Defendants' adoption and use of the Infringing Trade Dress, and Defendants continue using its Infringing Trade Dress with actual knowledge of its infringing conduct.

229. Upon information and belief, Defendants copied, adopted, and/or use the Infringing Trade Dress in interstate commerce in furtherance of Defendants' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, commercial success, and fame of products and services featuring the BLUE BOTTLE Trade Dress (including, without limitation, the Blue Bottle Products and Services).

230. Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its use of the Infringing Trade Dress in interstate commerce, to which Defendants are not entitled at law or in equity.

231. Upon information and belief, Defendants' acts and conduct complained of herein constitute trade-dress dilution in violation of 15 U.S.C. § 1125(c).

232. Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

233. Blue Bottle has no adequate remedy at law.

## ELEVENTH CLAIM FOR RELIEF

*(Unfair Competition, Cal. Bus. Prof. Code §§ 17200 et seq.)*

234. Blue Bottle incorporates the allegations set forth in paragraphs 1 – 233 of the Complaint as though set forth fully herein.

235. Count XI is for California statutory unfair competition.

236.    Defendants have engaged in unfair competition, including unfair, unlawful, and fraudulent business acts and practices and violations of California Business and Professions Code § 17200.

237.    Defendants are knowingly using marks that are similar to the BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks in commerce, employing advertising that is very similar to Blue Bottle's and using a domain name that is confusingly similar to the BLUE BOTTLE Mark and uniquely associated with Blue Bottle's business.

238.    Defendants' above-described acts, practices, and representations are made as part of a carefully orchestrated plan or scheme with the knowledge and intent that it will promote and enhance sales of its coffee and related products.

239.    Defendants' conduct in violation of Section 17200 has caused and continues to cause actual and substantial damage to Blue Bottle. Blue Bottle has expended significant efforts and financial resources to develop its brand identity, which is key to the sale of its own products and services. Defendants' unfair, unlawful, and deceptive conduct creates great risk to Blue Bottle's business reputation and brand identity.

240.    California consumers have been harmed as a direct, foreseeable, and proximate result of Defendants' actions, and are threatened with continued harm. Consumers face harm that includes further consumer confusion.

241.    As a consequence, Defendants have harmed and damaged Blue Bottle in an amount to be determined at trial. Blue Bottle seeks restitution or disgorgement of Defendants' profits as well as injunctive relief enjoining Defendants, and all persons acting in concert with Defendants from use of Defendants' Infringing Mark, the Infringing Trade Dress, or any other mark that is confusingly similar to the BLUE BOTTLE Marks, BLUE BOTTLE BLUE Marks, or the BLUE BOTTLE Trade Dress.

1

**TWELFTH CLAIM FOR RELIEF**

2

*(Trademark Dilution, Cal. Bus. Prof. Code §§ 14247)*

3

*(Dilution of the Famous BLUE BOTTLE Marks)*

4      242.    Blue Bottle incorporates the allegations set forth in paragraphs 1 – 241 of the

5    Complaint as though set forth fully herein.

6      243.    Count XII is for trademark dilution under California Business and Professions Code

7    § 14247.

8      244.    Upon information and belief, Defendants' acts and conduct complained of herein

9    constitute trademark dilution under California Business and Professions Code § 14247.

10     245.    Blue Bottle has suffered, and will continue to suffer, irreparable harm from

11   Defendants' acts and conduct complained of herein, unless restrained by law.

12     246.    Blue Bottle has no adequate remedy at law.

13

**THIRTEENTH CLAIM FOR RELIEF**

14

*(Trademark Dilution, Cal. Bus. Prof. Code §§ 14247)*

15

*(Dilution of the Famous BLUE BOTTLE BLUE Marks)*

16     247.    Blue Bottle incorporates the allegations set forth in paragraphs 1 – 246 of the

17   Complaint as though set forth fully herein.

18     248.    Count XIII is for trademark dilution under California Business and Professions Code

19   § 14247.

20     249.    Upon information and belief, Defendants' acts and conduct complained of herein

21   constitute trademark dilution under California Business and Professions Code § 14247.

22     250.    Blue Bottle has suffered, and will continue to suffer, irreparable harm from

23   Defendants' acts and conduct complained of herein, unless restrained by law.

24     251.    Blue Bottle has no adequate remedy at law.

25

26

27

28

- 34 -

**FOURTEENTH CLAIM FOR RELIEF**

*(Trade-Dress Dilution, Cal. Bus. Prof. Code §§ 14247)*

*(Dilution of the Famous BLUE BOTTLE Trade Dress)*

252.   Blue Bottle incorporates the allegations set forth in paragraphs 1 – 251 of the Complaint as though set forth fully herein.

253.   Count XIV is for trade-dress dilution under California Business and Professions Code § 14247.

254.   Upon information and belief, Defendants' acts and conduct complained of herein constitute trade-dress dilution under California Business and Professions Code § 14247.

255.   Blue Bottle has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

256.   Blue Bottle has no adequate remedy at law.

**FIFTEENTH CLAIM FOR RELIEF**

*(Unfair Competition, Trade Dress Infringement, and Trademark Infringement under California Common Law)*

*(Infringement of the BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks and BLUE BOTTLE Trade Dress)*

257.   Blue Bottle incorporates the allegations set forth in paragraphs 1 – 256 of the Complaint as though set forth fully herein.

258.   Count XV is for unfair competition, trademark infringement, and trade dress infringement under California common law.

259.   Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition, trademark infringement, and trade dress infringement under California common law.

**SIXTEENTH CLAIM FOR RELIEF**

*(Unjust Enrichment)*

260.    Blue Bottle incorporates the allegations set forth in paragraphs 1 – 259 of the Complaint as though set forth fully herein.

261.    Count XVI is for unjust enrichment.

262.    By infringing the BLUE BOTTLE Marks, BLUE BOTTLE BLUE Marks, and BLUE BOTTLE Trade Dress and intentionally sowing consumer confusion by misdirecting Blue Bottle's consumers to Defendants' website, without compensating Blue Bottle for the use of its Marks or for the siphoning off of its consumers, Defendants have unjustly enriched themselves to the detriment of Blue Bottle.

263.    As a consequence of Defendants' unjust enrichment, Blue Bottle seeks restitution, disgorgement of Defendants' profits, or both.

**PRAYER FOR RELIEF**

WHEREFORE, as a result of the unlawful acts of Defendants set forth in each of the counts above, Plaintiffs pray that the Court enter a judgment against Defendants:

a)  Preliminarily and permanently enjoining Defendants, their agents, servants, employees, officers and all persons in active concern and participation with them:

    i.   From using the BLUE BOTTLE Marks or BLUE BOTTLE BLUE Marks or any marks similar thereto (including, without limitation, the Infringing Mark) in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of Defendants' Products;

    ii.  From using the BLUE BOTTLE Trade Dress or any trade dress similar thereto (including, without limitation, the Infringing Trade Dress) in connection with the manufacture, distribution, advertising for sale, promotion for sale of any unauthorized goods or services, including the

manufacture, distribution, advertisement, promotion, holding for sale or selling of Defendants' Products;

iii.  From using any logo, trade name or trademark that may be calculated to falsely represent or that has the effect of falsely representing that the products of Defendants (including, without limitation, Defendants' Products) are sponsored by, authorized by or in any way associated with the Plaintiffs, the Blue Bottle brand, and/or any of the BLUE BOTTLE Products and Services;

iv.  From infringing Plaintiffs' trademarks; or

v.  From falsely representing itself (expressly or implicitly) as being connected with, sponsored by or associated with Plaintiffs or the Blue Bottle brand.

b)  Ordering the destruction of all unauthorized goods and materials bearing any copy or colorable imitation of the BLUE BOTTLE Marks or BLUE BOTTLE BLUE Marks, and/or BLUE BOTTLE Trade Dress.

c)  Pursuant to U.S.C. § 1116(a), ordering Defendants to file with the Court and serve upon Blue Bottle's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

d)  Finding that, by the acts complained of above, Defendants have infringed Blue Bottle's BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks in violation of 15 U.S.C. § 1114.

e)  Finding that, by the acts complained of above, Defendants have infringed Blue Bottle's Trade Dress in violation of 15 U.S.C. § 1125(a).

f)  Finding that, by the acts complained of above, Defendants have engaged in unfair competition, false designation of origin, false association, and/or false endorsement in violation of 15 U.S.C. § 1125(a).

g) Finding that, by the acts complained of above, Defendants have engaged in trademark infringement, trade-dress infringement, unfair competition, and passing off in violation of California statutory and common law.

h) Finding that the acts complained of above constitute willful infringement of the BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks and the BLUE BOTTLE Trade Dress.

i) Finding that Defendants' acts complained of above render this case "exceptional" within the meaning of 15 U.S.C. § 1117.

j) Ordering Defendants to provide Blue Bottle with a full accounting of all manufacture, distribution and sale of products under the Infringing Mark (including, without limitation, Defendants' Products), including all profits derived therefrom.

k) Ordering Defendants to provide Blue Bottle with a full accounting of all manufacture, distribution and sale of products featuring Defendants' Infringing Trade Dress (including, without limitation, Defendants' Products), including all profits derived therefrom.

l) Ordering cancellation of the BLUE BREW Registration by the USPTO.

m) Ordering Defendants to cease use of the Infringing Domain and surrender the Infringing Domain to Blue Bottle.

n) Ordering Defendants to pay Blue Bottle:

    i.      Defendants' profits for sale of the infringing goods offered under the Infringing Mark (including, without limitation, Defendants' Products);

    ii.     Defendants' profits for sale of the infringing goods featuring Defendants' Infringing Trade Dress;

    iii.    Treble damages in connection with Defendants' infringement of the BLUE BOTTLE Marks and BLUE BOTTLE BLUE Marks; and

    iv.    Blue Bottle's costs and reasonable attorneys' fees incurred in this matter.

o) Awarding Blue Bottle pre-judgment and post-judgment interest against Defendant.

p)   Awarding Blue Bottle such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Blue Bottle requests a trial by jury for all issues so triable pursuant to FED. R. CIV. P. 38(b) and 38(c).

Respectfully submitted,

MAYER BROWN LLP

Dated: August 6, 2021                By: */s/ Graham (Gray) Buccigross*

**MAYER BROWN LLP**
GRAHAM (GRAY) BUCCIGROSS (234558)
3000 El Camino Real
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306-2112
Tel:     (650) 331-2000
Fax:     (650) 331-2060

A. JOHN P. MANCINI (*pro hac vice* to be filed)
1221 Avenue of the Americas
New York, NY 10020-1001
Tel.:     (212) 506-2500
Fax:     (212) 262-1910

Attorneys for Plaintiffs Blue Bottle Coffee, LLC and Blue Bottle, Inc.

- 39 -