UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE BOTTLE COFFEE, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HUI CHUAN LIAO, et al.,<br><br>　　　　Defendants. | Case No. 21-cv-06083-CRB  (DMR)<br><br>**ORDER RE MOTION TO STRIKE REBUTTAL EXPERT OPINIONS OF RHONDA HARPER**<br><br>Re: Dkt. No. 117 |

Plaintiff Blue Bottle Coffee, LLC filed this action on August 6, 2021 against Defendants Hui Chan Liao and Southern Technologies, LLC asserting claims for trademark and trade dress infringements. Defendants counterclaimed against Plaintiff on October 20, 2022. [Docket No. 65.] The case was referred to the undersigned for resolution of all discovery matters. [Docket No. 61.] Plaintiff now moves to strike three rebuttal reports by Defendants' expert, Rhonda Harper (the "Harper Reports"). [Docket No. 117 ("Mot").] Defendants opposed and Plaintiff replied. [Docket Nos. 120 ("Opp'n"), 122 ("Reply").] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the court grants Plaintiff's motion to strike the Harper Reports.

On April 7, 2023, pursuant to the relevant scheduling order, Plaintiff served three opening expert reports by Jeffrey S. Andrien, Norman Broadhurst, and Jill Morton. Mot. at 5. Andrien's report opined on how and why corrective advertising damages are appropriate in this lawsuit. *Id.* (citing Docket No. 117-1 (A. John P. Mancini Decl., June 30, 2023) ¶ 4, Ex. 2 (Expert Report of Jeffrey S. Andrien at ¶ 10)). Broadhurst's report opined on (i) the distinctiveness of Plaintiff's marks-in-suit and (ii) how and why consumers are likely to associate the Defendants' branding with Plaintiff's branding and marks-in-suit. *Id.* at 5-6 (citing Mancini Decl. ¶ 5, Ex. 3 (Expert Report of Norman Broadhurst) at ¶¶ 13-19). Morton's report opined on how and why (i) the Blue

Bottle blue marks are attributes of the Blue Bottle brand instead of products sold under the Blue Bottle brand and (ii) the shade of blue that Defendants use for their products could cause consumers to associate those products with the Blue Bottle brand. *Id.* at 6 (citing Mancini Decl. ¶ 6, Ex. 4 (Expert Report of Jill Morton) ¶ 11). On the same date, Defendants served an opening expert report by Harper, addressing the secondary meaning of some of Plaintiff's asserted trademarks. Opp'n at 4; *see* Mancini Decl. ¶ 7, Ex. 5 (Expert Secondary Meaning Survey Report of Rhonda Harper).

On April 14, 2023, the Honorable Charles R. Breyer set a new case schedule, ordering the parties to submit opening reports by May 22, 2023 and rebuttal expert reports by June 19, 2023. [Docket No. 94.] Pursuant to that order, Plaintiff served updated versions of Andrien, Broadhurst, and Morton's reports, "which opined on the same subject matter as the April 7, 2023 versions of their opening reports." Mot. at 6 (citing Mancini Decl. ¶¶ 8-10, Exs. 6-8). On June 19, 2023, Defendants served three additional expert reports by Harper, all opining on the issue of consumer confusion. Mancini Decl. ¶¶ 11-13, Exs. 9-11 ("Trade Dress Forward Consumer Confusion Survey," "Trademark Forward Consumer Confusion Survey," and "Color Likelihood of Confusion Survey") (collectively, the Harper Reports). According to Defendants, the Harper Reports provide survey evidence that establishes non-infringement. Opp'n at 1.

Plaintiff contends that although Defendants describe the Harper Reports as "rebuttal reports," they are actually opening reports that Defendants were required to serve by May 22, 2023. Mot. at 7. Defendants' opposition brief is far from clear, but as best as the court can tell, they respond with two arguments. Their primary argument is that the Harper Reports were timely served because they fall under the definition of "rebuttal expert reports" agreed upon by the parties and later adopted by Judge Breyer. Defendants also seem to assert that the Harper Reports are true rebuttal expert reports because they address the same subject matter as Plaintiff's expert reports.

As to the first argument, Defendants assert that the parties' stipulations resulting in scheduling orders dated December 10, 2021 (Docket No. 37) and February 10, 2023 (Docket No. 73) clarified that opening expert reports would address "issues on which each party bears the burden of proof," while rebuttal reports would address "issues that are responsive to the burden of

1  proof expert reports or . . . issues which the party with the burden of proof did not provide an
2  expert report." Opp'n at 2-3 (referring to Docket Nos. 37, 73). Defendants ask the court to find
3  that the Harper Reports are timely because they meet the definition in those scheduling orders that
4  rebuttal reports may be "on issues which the party with the burden of proof did not provide an
5  expert report." *See* Opp'n at 1, 2 (emphasizing the relevant language); *see also id.* at 8. Plaintiff
6  counters that Defendants are wrong that language in non-operative scheduling orders still control;
7  instead, they urge the court to adopt the language in the most recent scheduling order dated April
8  13, 2023 (Docket No. 94), which refers to "rebuttal expert reports" without further definition. *See*
9  Reply at 2-4.

10  On August 16, 2023, the Honorable Judge Breyer issued an order addressing the meaning
11  of the April 13, 2023 scheduling order. [Docket No. 130.] The court held that the language in
12  Docket No. 94 was mere shorthand and that the court did not sign off on a change to the parties'
13  agreed-upon definition of "rebuttal expert reports." *Id.* In light of Judge Breyer's clarification, the
14  question now becomes whether the Harper Reports encompass issues on "which the party with the
15  burden of proof did not provide an expert report." *See* Docket Nos. 37, 73.

16  Defendants' position on this point is confusing and contradictory. They argue that the
17  Harper Reports fall under the definition of "rebuttal reports" in the prior scheduling orders because
18  they address an issue (consumer confusion) for which the party with the burden of proof did not
19  provide an expert report. *See* Opp'n at 1-3, 5 (distinguishing Plaintiff's cited case because it "did
20  not involve a party without the burden of proof filing a rebuttal report on an issue on which
21  Plaintiff failed to provide an expert report"). But at the same time, Defendants acknowledge that
22  Plaintiff served opening reports by Morton and Broadhurst that opine on the "likelihood of
23  [consumer] confusion," an issue on which Plaintiff carries the burden of proof. *See, e.g.*, Opp'n at
24  4.

25  Given Defendants' concession that Plaintiff's expert reports address the "likelihood of
26  confusion" – the same subject matter covered by the Harper Reports – the court cannot find that

3

these reports were timely filed under the scheduling orders.[1]

Next, Defendants argue that the Harper Reports "plainly rebut" the Broadhurst and Morton reports because they all address the issue of "likelihood of confusion." Opp'n at 11. It is not clear whether Defendants' argument continues to rely on the definition in the scheduling orders or hinges instead on the language under Federal Rule of Civil Procedure 26(a)(2)(D)(ii). That rule permits the disclosure of testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). Plaintiff responds that the Harper Reports are not rebuttal reports because they 1) do not even mention Plaintiff's expert reports, and 2) concern an entirely different subject matter than any of Plaintiff's expert reports. Mot. at 8-9. The court agrees with Plaintiff's first point.

Plaintiff explains that the Harper Reports do not list any of Plaintiff's expert reports as materials reviewed and considered by Harper.[2] Mot. at 9. In fact, two of the Harper Reports are dated May 5, 2023 – 17 days before Plaintiff served its expert reports on May 22, 2023. *Id.* In addition, the names of Plaintiff's experts do not appear anywhere in the Harper Reports. *Id.*

Defendants only tangentially respond to Plaintiff's arguments. They are silent on whether Harper reviewed Plaintiff's expert reports in preparing her reports. Instead, they argue that Plaintiff's cited case, *Petersen v. Costco Wholesale Co. Inc.*, No. SACV131292DOCJCGX, 2017 WL 11046667, at *2 (C.D. Cal. May 1, 2017), contradicts Plaintiff's position because it states that

---

[1] If Defendants are arguing that they timely filed the Harper Reports by the deadline for "rebuttal reports" because they do not bear the burden of proof on the issue of "likelihood of confusion," that argument is also unavailing. First, to the extent Defendants are making this argument, it is far from obvious. As previously mentioned, Defendants repeatedly rely on the language defining "rebuttal reports" in the scheduling order – not the language defining opening reports. *See* Opp'n at 1, 2 (emphasizing that the scheduling order clarifies that rebuttal reports may be "on issues which the party with the burden of proof did not provide an expert report"). Second, the scheduling order states that opening reports include "reports on issues on which each party bears the burden of proof." [Docket Nos. 37, 73.] Even assuming Defendants do not bear the burden of proof on the issue of "likelihood of confusion," that Defendants could not serve the Harper Reports as affirmative expert reports does not automatically qualify them as "rebuttal reports" under the scheduling orders.

[2] All three Harper Reports assert the following under the section "Materials Received and Considered": "To understand the pertinent background information on this case, I reviewed the First Amended Complaint for Damages and Injunction and the Defendant's Answer to Complaint, Defendants' Amended Answer to First Amended Complaint and Counterclaims, and Answer of Blue Bottle Coffee, LLC to Countercomplaint." Harper Reports ¶ 20.

4

the rule on rebuttal experts "does not necessarily require that the rebuttal expert's report explicitly reference the primary expert's report." Opp'n at 11. The *Peterson* court nevertheless noted that the rule "does require that [the report] rebut the primary expert's report." Indeed, *Petersen* struck two purported rebuttal expert reports, concluding that they should have been designated as primary experts. 2017 WL 11046667, at *3-*4. In any event, Defendants' failure to explain how the Harper Reports could possibly rebut expert reports that are not listed in the "Materials Received and Considered" section or even mentioned in the reports themselves is fatal to their argument. *See Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015) (noting in analogous circumstances that such a "glaring" issue alone is a sufficient reason to strike an expert report). Indeed, "[c]ourts have repeatedly held that an expert is improperly designated as a rebuttal expert when he has failed to review the initial expert report, or otherwise failed to indicate that he was aware of the opinions offered by the initial expert." *Id.* (cleaned up) (collecting cases). As the *Clear-View* court explained, "[s]uch a rule makes sense: an expert cannot be said to 'rebut' testimony he or she has never seen or reviewed." *Id.*

Because the Harper Reports do not qualify as "rebuttal reports" under the scheduling orders or Rule 26(a)(2)(D)(ii), the reports must be stricken unless Defendants show that their failure to serve the reports was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Defendants' arguments are not persuasive. First, they argue that the untimely submission of the Harper Reports is substantially justified because they relied on the parties' agreed-upon definition of rebuttal reports in Docket Nos. 37 and 73. Opp'n at 9-10. As previously explained, this argument is unavailing because Defendants do not show how the Harper Reports fall under the scheduling orders' definition of rebuttal reports. Second, Defendants contend that the untimely submission is harmless because 1) Plaintiff has already noticed the deposition of Harper and will have an opportunity to cross-examine her, and 2) Plaintiff had an opportunity to submit

1  expert reports on a similar subject matter but chose not to do so.[3]  *Id.*  Neither of these arguments
2  explain why Plaintiff would not suffer "obvious prejudice" from its inability to offer an opposing
3  expert to rebut Harper's additional reports absent further delay to the case schedule.[4]  *See* Mot. at
4  12-13.

5  As Plaintiff points out, "[d]isruption to the schedule of the court and other parties in that
6  manner is not harmless.  Courts set such schedules to permit the court and the parties to deal with
7  cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there
8  are good reasons not to." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir.
9  2005); *see also Martinez v. Cnty. of San Benito*, No. 15-CV-00331-JST, 2018 WL 1863013, at *2
10 (N.D. Cal. Apr. 18, 2018) (holding delay in briefing on motion for summary judgment was not
11 harmless).

12 In light of the above, Rule 37(c)(1) requires that the Harper Reports be stricken, and that
13 Defendants be precluded from relying on the Harper Reports on a motion, at a hearing, or at trial.
14 Defendants' motion for sanctions under Rule 37(a)(5)(B) is denied.

**IT IS SO ORDERED.**

Dated: August 25, 2023

_____
Donna M. Ryu
Chief Magistrate Judge

---

[3] Defendants assert that Plaintiff never requested the ability to serve a third set of expert reports to address expert reports by the party without the burden of proof.  Opp'n at 14.  Defendants' argument misses the point.  As previously explained, Defendants have not shown that the Harper Reports were timely submitted under the scheduling orders or Rule 26(a)(2)(D)(ii).

[4] At most, Defendants argue that Plaintiff's arguments in this respect are "disingenuous" because counsel previously sought a 45-day extension of the case and cited cases for the proposition that delaying the case would not be prejudicial.  *See* Opp'n at 14.  In addition, Defendants note that no trial date has been set in this case.  *Id.*  These arguments are not compelling in light of Plaintiff's upcoming deadline to file a motion for summary judgment by August 31, 2023.  [Docket No. 128.]