Victor de Gyarfas, CA Bar No. 171950
vdegyarfas@foley.com
Tiffany K. Sung, CA Bar No. 323077
tsung@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213-972-4500
FACSIMILE: 213-486-0065

Attorneys for Defendants HUI CHUAN LIAO and
SOUTHERN TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE BOTTLE COFFEE, LLC,<br><br>   Plaintiff,<br><br>    vs.<br><br>HUI CHUAN LIAO,<br><br>  and<br><br>SOUTHERN TECHNOLOGIES, LLC,<br><br>   Defendants. | Case No. 3:21-cv-06083-CRB<br><br>**DEFENDANTS HUI CHUAN LIAO AND SOUTHERN TECHNOLOGIES, LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   August 2, 2024<br>Time:   10:00 a.m.<br>Place:   Courtroom 6 – 17th Floor<br>Judge:   The Hon. Charles R. Breyer |
| HUI CHUAN LIAO,<br><br>  and<br><br>SOUTHERN TECHNOLOGIES, LLC,<br><br>   Counter-Plaintiffs,<br><br>    vs.<br><br>BLUE BOTTLE COFFEE, LLC,<br>   Counter-Defendant. | |

**<u>NOTICE OF MOTION AND MOTION</u>**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 2, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Hui Chuan Liao ("Liao") and Southern Technologies, LLC ("ST") (collectively, "Defendants") will, and hereby do, move this Court, pursuant to 15 U.S.C. § 1117(a) for an award of reasonable attorneys' fees in the amount of $1,148,144.50 and for non-taxable costs in the amount of $181,037.15. Plaintiff's claims were baseless from the start, and Plaintiff's persistence in pursuing them and repeatedly making false statements to the Court render this case exceptional.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the exhibits referenced therein, the accompanying Proposed Order, and all pleadings, papers, and records on file in this action, and such matters of which this Court may take judicial notice, and upon such further oral argument and documentary evidence as may be presented at the time of hearing.

DATED: May 21, 2024                    **FOLEY & LARDNER LLP**

_/s/ Victor de Gyarfas_
Victor de Gyarfas
Attorneys for Defendants HUI CHUAN LIAO and
SOUTHERN TECHNOLOGIES, LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ........................................................1

III.  FACTUAL BACKGROUND ........................................................................................1

    A.    THE PARTIES ..................................................................................................1

    B.    CASE HISTORY ..............................................................................................2

        1.    Plaintiff Assigned Away Its Rights Before Filing Suit ......................2

        2.    Plaintiff Originally Pleaded 15 Causes Of Action ............................2

        3.    Defendants Attempted To Conserve Fees Through Mediation ..........2

        4.    Plaintiff Made Baseless Objections During Discovery .....................3

        5.    Plaintiff Failed To Conduct Any Surveys .........................................3

IV.   LEGAL STANDARDS ...............................................................................................3

    A.    STANDARDS FOR FINDING A CASE TO BE EXCEPTIONAL, WARRANTING AN AWARD OF ATTORNEY'S FEE ..........................................................................3

V.    COMPLIANCE WITH LOCAL RULE 54-5 ..............................................................4

VI.   SUMMARY OF FEES AND COSTS SOUGHT .........................................................4

VII.  DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES IN THIS EXCEPTIONAL CASE ......4

    **A.**    THE WEAKNESS OF PLAINTIFF'S CLAIMS MAKE THIS CASE EXCEPTIONAL .......4

        1.    Plaintiff Never Had Standing To Sue On Most Of Its Claims ..................4

        2.    Plaintiff's Substantive Likelihood Of Confusion Claims Did Not Even Merit A Trial ..............................................................................5

        3.    Plaintiff Lost Fully Or Partially On Almost Every Significant Motion Decided By The District Court ........................................................6

    B.    PLAINTIFF LITIGATED THIS CASE IN A NEGLIGENT AND UNREASONABLE MANNER ........................................................................8

        1.    Plaintiff's Complaint Referenced Non-Existent Figures .........................8

        2.    Plaintiff Questioned Defendant Using "Attorney Work Product" Labeled Exhibits ..............................................................................8

        3.    Plaintiff Repeatedly Filed Documents Near Or After Midnight Demonstrating Lack Of Organization ....................................................8

i

4.    Plaintiff's Summary Judgment Opposition Cited To Non-Existent Exhibits, Demonstrating Gross Negligence ............................................................... 9

C.    AWARDING ATTORNEYS' FEES IS NECESSARY TO DETER CONDUCT OF THE TYPE PLAINTIFF ENGAGED IN AND TO COMPENSATE DEFENDANTS .................. 9

D.    DEFENDANTS' ATTORNEYS' FEES ARE REASONABLE ........................................... 10

1.    The Billing Rates Were Reasonable ...................................................... 10

a.    Counsel Utilized Its Standard Rates For Its Experienced Team .................... 10

b.    The Rates Are Consistent With Rates Approved In N.D. Cal. Cases ................................................................................................ 11

c.    The Rates Are Consistent With The AIPLA Survey Rates ........................... 12

2.    The Hours Expended and Work Performed Was Reasonable ............................... 13

VIII.    DEFENDANTS SHOULD BE AWARDED THEIR NON-TAXABLE COSTS ............................. 15

IX.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

ABC Water LLC v. APLus Water, LLC,
　　No. 2:18-cv-04851-SPL, 2020 WL 8838650 ........................................................... 17

Amazon.com, Inc. v. PersonalWeb Techs., LLC (In re PersonalWeb Techs., LLC),
　　No. 18-md-02834-BLF, 2023 U.S. Dist. LEXIS 223874 (N.D. Cal. Decl. 15, 2023) ................... 14

Blum v. Stenson,
　　465 U.S. 886 (1984) ........................................................................ 12

Cairns v. Franklin Mint Co.,
　　292 F.3d 1139 (9th Cir. 2002) ............................................................... 15

Camacho v. Bridgeport Fin., Inc.,
　　523 F.3d 973 (9th Cir. 2008) ................................................................ 12

Dropbox, Inc. v. Thru Inc.,
　　No. 15-cv-01741-EMC, 2017 U.S. Dist. LEXIS 33325 (N.D. Cal. Mar. 8, 2017) ........... 13, 15, 17

Facebook, Inc. v. Power Ventures, Inc.,
　　No. 08-CV-05780-LHK, 2017 U.S. Dist. LEXIS 125541 (N.D. Cal. Aug. 8, 2017) ................... 13

Fleming v. Impax Labs. Inc.,
　　No. 16-cv-06557-HSG, 2022 U.S. Dist. LEXIS 125595 (N.D. Cal. July 15, 2022)................... 14

Fogerty v. Fantasy, Inc.,
　　510 U.S. 517 (1994) ......................................................................... 4

Gates v. Deukmejian,
　　987 F.2d 1392 (9th Cir. 1992) ............................................................... 12

Gracie v. Gracie,
　　217 F.3d 1060 (9th Cir. 2000) ................................................................ 4

Hefler v. Wells Fargo & Co.,
　　No. 16-CV-05479, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Decl. 18, 2018) ................... 14

Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters.,
　　No. CV 08-7587 R, 2009 U.S. Dist. LEXIS 132872 (C.D. Cal. Decl. 14, 2009) ................... 14

Kohler v. Eddie Bauer LLC,
　　792 F. App'x 446 (9th Cir. 2019) ....................................................... 11, 12

Lindy Pen Co., Inc. v. Bic Pen Corp.,
　　725 F. 2d 1240 (9th Cir. 1984) ............................................................... 8

Monster, Inc. v. Dolby Laboratories Licensing Corp.,
  920 F. Supp. 2d 1066 (N.D. Cal. 2013) ................................................................................. 3

Moore v. Jas. H. Matthews & Co.,
  682 F.2d 830 (9th Cir. 1982) ............................................................................................... 13

Nitsch v. DreamWorks Animation SKG Inc.,
  2017 U.S. Dist. LEXIS 86124 (N.D. Cal. June 5, 2017) ............................................... 13, 14

Octane Fitness, LLC v. ICON Health & Fitness, Inc.,
  572 U.S. 545 (2014) .................................................................................................. 3, 4, 11

Perfect 10, Inc. v. Gig,
  anews, Inc., No. CV 11-07098-AB (SHx), 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ........................... 13

Prison Legal News v. Schwarzenegger,
  608 F.3d 446 (9th Cir. 2010) ............................................................................................... 14

Relevant Group, LLC v. Nourmand,
  Case No. 2:19-cv-05019-ODW (KSx), 2022 WL 3096871 (N.D. Cal. May 17, 2022) ............................. 11

Sazerac Company, Inc. v. Fetzer Vineyards, Inc.,
  2017 WL 6059271 (N.D. Cal. 2017) ............................................................................. 16, 17

Schneider v. Chipotle Mexican Grill, Inc.,
  336 F.R.D. 588 (N.D. Cal. Nov. 4, 2020) ............................................................................ 14

Seltzer v. Green Day, Inc.,
  725 F.3d 1170 (9th Cir. 2013) ................................................................................................. 5

Solar Sun Rings, Inc. v. Secard Pools, Inc.,
  417 PSG (KKx), 2016 WL 6138280 (C.D. Cal. Jan. 7, 2016) .............................................. 11

Stonebrae L.P. v. Toll Bros.,
  2011 WL 1334444 (N.D. Cal. 2011) .................................................................................... 16

Sunearth, Inc. v. Sun Earth Solar Power Co.,
  839 F.3d 1179 (9th Cir. 2016) ...................................................................................... 3, 4, 11

United Steelworkers of Am. v. Phelps Dodge Corp.,
  896 F.2d 403 (9th Cir. 1990) ............................................................................................... 12

Universal City Studios, Inc. v. Nintendo Co.,
  797 F.2d 70 (2d Cir. 1986) .................................................................................................. 15

In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,,
  No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. March 17, 2017) ....................... 14

Perfect 10, Inc. v. Giganews, Inc.,
  No. CV 11-07098-AB (SHx), 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............................ 13

Upmann Sanchez Turf and Landscape, Inc. v. US TURF, LLC,
  2023 WL 2610178 (D. Nev. Mar. 23, 2023) ................................................................ 8

Wyatt Tech. Corp. v. Malvern Instruments,
  Incorp., 2010 WL 11404472 (C.D. Cal. June 17, 2010) ............................................ 17

FEDERAL STATUTES

15 U.S.C. § 1117(a) .............................................................................................................. 3

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants prevailed completely on their motion for summary judgment and Plaintiff's motion was denied. Defendants are indisputably the prevailing party in this litigation. This case is exceptional in that it stands out from others with respect to the substantive strength of Defendants' litigating position and weakness of Plaintiff's position. Specifically, Plaintiff Blue Bottle Coffee, LLC ("Blue Bottle" or "Plaintiff") never had standing to bring any of the trademark infringement, trade dress infringement, or unfair competition claims in this lawsuit. Despite having the burden to establish its right to sue, and after having been threatened with Rule 11 sanctions for its failure to do, Plaintiff persisted in pursuing this lawsuit without even making a good faith attempt to establish standing. Plaintiff's claims were also so weak with respect to likelihood of confusion issues that they did not deserve to go to a jury and should never have been litigated. In any case, Plaintiff most certainly should never have litigated the case in the unreasonable and negligent manner in which it did. Plaintiff repeatedly lost on substantive motions, made false statements to the Court and repeatedly made negligent filings. Accordingly, under 15 U.S.C. § 1117(a), Defendants should be awarded their attorneys' fees and non-taxable costs.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.      Whether this case is an "exceptional case" in that it is one that stands out from others with respect to the substantive strength of a party's litigating position, given that Plaintiff never had standing to sue, its substantive claims were so weak that it did not warrant a jury trial, and Plaintiff litigated the case in an unreasonable manner?

2.      Are Defendants' attorneys' fees sought reasonable?

3.      Should Defendants' non-taxable costs be awarded?

## III.   FACTUAL BACKGROUND

### A.   The Parties

Plaintiff is a coffee business that operates cafes and sells coffee and coffee-related products online, in its cafes, and in retail stores. FAC ¶¶ 14-15, 17 (ECF No. 32).

Defendant Southern Technologies, LLC ("ST") offers coffee gear and accessories under its BLUE BREW® brand. ECF No. 184-7, Ex. F, Liao 30(b)(6) Tr. at 29:14-18. Ms. Liao is the founder and 95% owner of ST. Id. at 33:4-8. She is also the record owner of the BLUE BREW trademark registration. ECF No. 184-14, Ex. M. ST has sold relatively little and never made more than $3,000 a year in profit (see Hui Chan Liao 30(b)(6) Deposition Ex. 7,

Ex. F to the de Gyarfas Decl.) and its sales are dwarfed by Plaintiff's sales.

**B.   Case History**

**1.   Plaintiff Assigned Away Its Rights Before Filing Suit**

When Plaintiff initiated this lawsuit on August 6, 2021, it did not own the Asserted Trademarks. On July 15, 2021, Blue Bottle Coffee, LLC assigned all its rights to the Asserted Trademarks to Société des Produits Nestlé S.A. ("Nestlé"). Importantly, the trademark assignment not only transferred the trademark rights and goodwill, but it also transferred to Nestlé "any and all … litigation claims and rights including **the right to sue for and collect upon all claims for profits and damages as a result of past infringement**" (emphasis added). ECF No. 184-17, Ex. S.

> Assignor hereby sells, assigns, transfers, conveys and delivers to Assignee and its successors and assigns, Assignor's entire right, title and interest in and to the trademarks and trademark applications set forth on <u>Schedule A</u>, together with the goodwill associated therewith, and any and all accounts, contract rights, warranties, litigation claims and rights, including the right to sue for and collect upon all claims for profits and damages as a result of past infringement, if any, and other general intangibles of Assignor related to any of the Schedule A trademarks and trademark applications.

**2.   Plaintiff Originally Pleaded 15 Causes Of Action**

On August 6, 2021, Plaintiff filed a complaint against Defendants asserting 15 causes of action for trademark infringement (2 claims), federal unfair competition (2 claims), trademark cancellation, federal trade dress infringement, federal trademark dilution (2 claims), violation of the Anti-Cybersquatting Consumer Protection Act, federal trade dress dilution, state law unfair competition, state trademark dilution (2 claims), state trade dress dilution, and one claim for common law unfair competition, trade dress infringement, and trademark infringement. ECF No. 1.

In November of 2021, Defendants explained to Plaintiff that its pleading of its trade dress claim was inadequate and Plaintiff agreed to amend its complaint. Ex. H.

**3.   Defendants Attempted To Conserve Fees Through Mediation**

Defendants had only sold a low volume of accused products and were hopeful that the case would end quickly and economically through mediation. The parties started mediation in March 2022 and agreed to extend discovery deadlines by 30 days during mediation to focus on settlement. Ex. I. Plaintiff, however, did not accept Defendants' reasonable positions in mediation and the parties began the discovery process in earnest. Even so, as detailed in Exhibit D to the de Gyarfas declaration, even through June of 2023, monthly fees were not high, as Defendants'

counsel was mindful to run the case leanly. It was not until the end of discovery and summary judgment briefing that the fees and costs had to be ramped up in order to comply with the pre-trial deadlines.

### 4. Plaintiff Made Baseless Objections During Discovery

Plaintiff consistently made baseless, boilerplate objections during discovery, driving up the cost of discovery. See, e.g., discovery letters dated 5/6/2022 detailing Plaintiff's meritless positions, Exs. J, K.

### 5. Plaintiff Failed To Conduct Any Surveys

Survey evidence is often the most persuasive evidence regarding the issue of trademark infringement. Monster, Inc. v. Dolby Laboratories Licensing Corp., 920 F. Supp. 2d 1066, 1072 (N.D. Cal. 2013).

Despite survey evidence being some of the strongest evidence in trademark infringement cases, Plaintiff failed to conduct any surveys, even though it certainly had the resources to do so. The reasons for Plaintiff's failure to conduct any surveys has never been explained.

## IV.  LEGAL STANDARDS

### A.  Standards For Finding A Case To Be Exceptional, Warranting An Award Of Attorney's Fee

The Lanham Act authorizes the court "in exceptional cases" to "award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). According to the Supreme Court and the Ninth Circuit, the standard is not especially onerous. Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, at 553-554 (2014); Sunearth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179, 1181 (9th Cir. 2016). An exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. To determine whether a case is exceptional, a district court examines the "'totality of the circumstances' to determine if the case was exceptional, … exercising equitable discretion … using a preponderance of the evidence standard." Id. When determining whether to award fees, a court should look to the "totality of the circumstances," and consider the nonexclusive factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 572 U.S. at 554 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).

Under the Lanham Act, a party can recover legal fees incurred in litigating non-Lanham Act claims if "the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on claims." Gracie v. Gracie, 217 F.3d 1060, 1069 (9th Cir. 2000). The Ninth Circuit has "consistently held that

state common law claims of unfair competition and actions pursuant to [Section] 17200 are 'substantially congruent' to claims made under the Lanham Act." <u>Seltzer v. Green Day, Inc.</u>, 725 F.3d 1170, 1180 n.1 (9th Cir. 2013). Here, the non-Lanham Act claims for state law unfair competition are completely intertwined with the Lanham Act claims, as the elements are the same. Accordingly, all of the fees incurred defending against all of Plaintiff's claims are warranted. Defendants are entitled to their attorneys' fees on all of Plaintiff's claims because Defendants prevailed on those claims and Plaintiff's conduct stands out as "exceptional."

## V.   <u>COMPLIANCE WITH LOCAL RULE 54-5</u>

The Local Rule 54-5(b)(1) statement is provided in de Gyarfas Decl. ¶ 2.

The requirements of Local Rule 54-5(b)(2) are satisfied by de Gyarfas Decl. ¶¶ 12-43.

The requirements of Local rule 54-5(b)(3) are satisfied by de Gyarfas Decl. ¶¶ 6-11.

## VI.   <u>SUMMARY OF FEES AND COSTS SOUGHT</u>

Despite Defendants' efforts to stem litigation costs in what was perceived to be a low value case, Plaintiff forced Defendants to incur significant fees for which they now seek compensation, as they are entitled to do under established law. In sum, and as discussed in more detail below, the case could be thought of as occurring in rough stages with the following attorneys' fees (through April 2024) (de Gyarfas Decl. ¶ 8 & Ex. D):

- Totals:

| Name | Title | Billed unt | Average Bill Hour | Billed Hours |
|---|---|---|---|---|
| Victor de Gyarfas | Partner | $782,286.50 | $1,176.37 | 665.00 |
| Laura Ganoza | Partner | $102,625.00 | $961.81 | 106.70 |
| Tiffany K. Sung | Associate | $263,233.00 | $696.94 | 377.70 |
| **Totals** | | **$1,148,144.50** | | **1,149.40** |

## VII.   <u>DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES IN THIS EXCEPTIONAL CASE</u>

### A.   <u>The Weakness Of Plaintiff's Claims Make This Case Exceptional</u>

#### 1.   <u>Plaintiff Never Had Standing To Sue On Most Of Its Claims</u>

Despite having the burden to do so, Plaintiff failed to establish any ownership interest in any mark upon which it sued Defendants because Plaintiff assigned away its rights before filing this lawsuit. Plaintiff thus never had standing to sue on its Lanham Act Section 32 claims. It is shocking that Plaintiff unnecessarily put Defendants and the Court through years of litigation based on a case that should never have been brought. Either Plaintiff failed to investigate its standing to sue, which is shocking enough, or Plaintiff did investigate its standing and decided to sue

nevertheless in an attempt to bully a much smaller competitor, which would be even more shocking. Plaintiff's failure to establish standing to sue is frivolous and objectively unreasonable and makes this case stand out from others with respect to the substantive strength of Plaintiff's litigating position, thus rendering this case exceptional.

Compounding the extraordinary nature of Plaintiff's failure is that Plaintiff identified the party to whom it assigned its trademarks, Société des Produits Nestlé S.A., as an interested party in its Local Rule 15-3 Certificate of Interested parties (ECF No. 3). Further, Plaintiff's lead counsel has repeatedly made appearances in other cases on behalf of Société des Produits Nestlé S.A. and other Nestlé related entities. See de Gyarfas Decl. ¶¶ 50-52, Exs. L, M, N. Presumably Plaintiff and its counsel had access to the information that Plaintiff had no right to sue on the asserted trademarks, but Plaintiff and its counsel sued, nonetheless.

Nevertheless, Plaintiff still falsely contended in its summary judgment briefing that it did have standing. Plaintiff also falsely asserted that the license to use the trademarks was not requested in discovery, but the Court found that it was. See ECF No. 210 at 12:7 "As an initial matter, the license did come up during discovery."

Plaintiff also suffered no harm from any act of Defendants. Accordingly, Plaintiff had no standing to sue on its Lanham Act Section 43 claims. Id. at 14:27-15:1.

### 2.    Plaintiff's Substantive Likelihood Of Confusion Claims Did Not Even Merit A Trial

Plaintiff's substantive claims were for infringement of the BLUE BOTTLE COFFEE word marks, the BLUE BOTTLE BLUE color marks, and Plaintiff's alleged trade dress. As this Court found with respect to the word marks, the marks do not sound similar (ECF No. 210 at 24:15-25:1), they mean different things (id. at 25:2-5), and with respect to sight "the marks are not similar" (id. at 25:7-26:25).

Regarding the color marks, contrary to Plaintiff's baseless insistence that Blue Brew's light blue color is "an identical or nearly identical shade of blue" to Plaintiff's blue, that assertion is objectively false. As this Court found, "[t]he colors have different Pantone numbers, and look different to the eye." (ECF No. 210 at 44:16-17.)

Regarding the alleged trade dress, the Court identified so many differences between the alleged trade dress and Defendants' packaging that it was apparent "[t]he trade dress is not similar." (ECF No. 210 at 51:21-53:2.) Again, the obvious differences between the appearance of the parties' packaging rendered it objectively unreasonable for Plaintiff to have brought this case.

Because Plaintiff's substantive claims were so weak, the Court found: "While the Court's conclusion herein is based on more than a single factor, that the parties' marks are not similar leads the Court to believe that no consumer

is likely to be confused. . . . That marks that are not similar appear on similar products and in similar marketing channels does not merit a trial. Accordingly, for all of the foregoing reasons, the Court DENIES Blue Bottle's motion, and GRANTS Defendants' motion." ECF No. 210 at 54:15-55:1. The weakness of Plaintiff's claims also makes this case stand out from others based on the sheer lack of substantive strength of Plaintiff's litigating position rendering this an exceptional case.

### 3. Plaintiff Lost Fully Or Partially On Almost Every Significant Motion Decided By The District Court

Throughout this case, Plaintiff took unreasonable positions at nearly every turn, in an apparent effort to drive up the cost of litigation and exhaust Defendants' resources. Plaintiff lost fully or partially on almost every significant disputed motion decided by the District Court.

- ECF No. 64 dated 10/19/2022 – Defendants sought leave to file an amended answer and counterclaims after an expert report provided a factual basis to assert Plaintiff's color marks lacked secondary meaning. Plaintiff baselessly opposed the motion, but the Court granted the motion. This ruling was a complete loss for Plaintiff.

- ECF No. 77 dated 3/23/2023 (decided by the Magistrate Judge) – Plaintiff ignored the procedures for raising a discovery related dispute and its discovery motion was denied without prejudice.

- ECF No. 130 dated 8/16/2023 – Plaintiff brought a motion to strike Defendants' Harper expert rebuttal reports based in part on the theory that the Scheduling Order of ECF No. 94 rendered the language of prior Scheduling Orders ECF Nos. 37 and 73 a nullity. See Plaintiff's Reply Brief, ECF No. 122 at 1:22-4:20. The language of Scheduling Orders ECF Nos. 37 and 73 defined Rebuttal Reports to address "[i]ssues that are responsive to the Burden of Proof expert reports or are rebuttal expert reports on issues which the party with the burden of proof did not provide an expert report." Although Defendants provided Plaintiff with ample authority regarding the correctness of Defendants' positions, Plaintiff failed to address a single case cited by Defendants. See Defendants' Opposition, ECF No. 120 at 1:7-10. In ECF No. 130, the District Court ruled that the Scheduling Order of ECF No. 94 did not change the definition of Rebuttal Reports found in ECF Nos. 37 and 73. This ruling was a complete loss for Plaintiff.

- ECF No. 163 dated 10/5/2023 – After the Magistrate Judge mistakenly struck the Harper expert rebuttal reports, the District Court granted Defendants' motion for relief from the Magistrate Judge's Order. The

6

District Court granted the sought relief and concluded "that the Harper Reports were rebuttal reports and were timely." Id. at 7:1-2. Indeed, Plaintiff's original motion was based on arguments no party would have made in good faith. Plaintiff first improperly argued that the burden of proof did not matter in this case when determining whether a report is a proper rebuttal report.[1] Plaintiff also took the frivolous position that Defendants bore the burden of proof on "no likelihood of confusion,"[2] in blatant contravention of settled Ninth Circuit authority. Lindy Pen Co., Inc. v. Bic Pen Corp., 725 F. 2d 1240, 1243 (9th Cir. 1984). This ruling was a complete loss for Plaintiff.

- ECF No. 176 dated 10/31/23 – Plaintiff's loss on ECF No. 163 so threatened Plaintiff's case that it sought reconsideration of the order of ECF No. 163, merely restating its previously rejected arguments. The District Court restated the analysis of its previous ruling and denied Plaintiff's motion. This ruling was a complete loss for Plaintiff.

- ECF No. 168 dated 10/16/2023 -  Defendants brought a motion to exclude testimony of one of Plaintiff's purported experts, Jill Morton concerning among other things, likelihood of confusion. The Court granted the motion as to Morton's testimony that there is a likelihood of confusion between Plaintiff's and Defendants' products and denied the motion in all other respects. Id. at 21:9-12. This ruling was a partial loss for Plaintiff.

- ECF No. 178 dated 11/30/2023 – Plaintiff brought a meritless motion to exclude one of Ms. Harper's expert reports, but only attacked the reports on issues going to weight rather than admissibility. The District Court found: "Because the survey was conducted according to accepted principles, and any further criticism of the survey goes to its weight rather than its admissibility, the Court DENIES the motion." Id. at 1:24-26. This ruling was a complete loss for Plaintiff.

- ECF No. 210 dated 5/7/2024 – In the final ruling on the merits of the case, the District Court denied

---

[1] ECF No. 122 at 2:14-18 – "Defendants cannot refute that the Scheduling Order that the Court so-ordered on April 13, 2023, governs this case and all expert reports—rebuttal and otherwise—produced after that date. ECF 94. This Scheduling Order simply refers to 'Opening Expert Reports' and 'Rebuttal Expert Reports' and **makes no distinctions based on each party's respective burdens of proof**." (emphasis added)

[2] ECF No. 122 at 7, n.6, lines 25-26 - "In addition, the Harper Reports address an issue on which **Defendants bear the burden of proof: no likelihood of confusion**, as further explained supra, at 5-7. And because Defendants have this burden of proof, Defendants cannot meaningfully distinguish Upmann Sanchez Turf and Landscape, Inc. v. US TURF, LLC, 2023 WL 2610178, at *3 (D. Nev. Mar. 23, 2023) either, as the rebuttal report at issue in that case also encompassed an issue on which the party submitting report had the burden of proof." (emphasis added)

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS
Case No. 3:21-CV-06083-CRB

in full Plaintiff's motion for summary judgment and granted Defendants' motion. Id. at 54:26-27. As discussed above, the District Court found that Plaintiff lacked standing to sue on most of its claims and Plaintiff lost on all claims concerning likelihood of confusion, including its baseless attempt to cancel Defendant Hui Chan Liao's registration for the BLUE BREW® mark. This ruling was a complete loss for Plaintiff.

Plaintiff's remarkable losing streak on substantive motions, especially on baseless motions that Plaintiff itself brought, also highlights the weakness of Plaintiff's case, and demonstrates how this case stands out from others, rendering the case exceptional.

### B.   Plaintiff Litigated This Case In A Negligent And Unreasonable Manner

#### 1.   Plaintiff's Complaint Referenced Non-Existent Figures

From the beginning of the case, it was apparent that Plaintiff was litigating in a sloppy and negligent manner. The initial complaint referred to "Figures 6-10, *supra*," at ECF No. 1 at 13:19, but the complaint contained only two figures and Figures 6-10 were non-existent.

#### 2.   Plaintiff Questioned Defendant Using "Attorney Work Product" Labeled Exhibits

Plaintiff presented exhibits to Defendants' Rule 30(b)(6) witness with its own applied label of "ATTORNEY WORK PRODUCT," demonstrating its lack of preparedness and careless approach to litigating this case. See ECF Nos. 184-21, 184-22.

#### 3.   Plaintiff Repeatedly Filed Documents Near Or After Midnight Demonstrating Lack Of Organization

Plaintiff's complete lack of organization was demonstrated by repeatedly making near midnight or post-midnight filings, even though its counsel was on the East Coast. See, e.g.:

- ECF No. 136, Plaintiff's first motion for summary judgment filed at 11:50 pm on 8/31/2023;
- ECF No. 137, Plaintiff's declaration entered at 12:04 am on 9/1/2023;
- ECF No. 138, Declaration of Jon Alsterlind entered at 12:07 am on 9/1/2023;
- ECF No. 139, Declaration of Jeff Cha entered at 12:18 am on 9/1/2023;
- ECF No. 140, Request for Judicial Notice entered at 12:17 am on 9/1/2023;
- ECF No. 141, Administrative Motion To File Under Seal entered at 12:59 am on 9/1/2023;
- ECF No. 142, Administrative Motion to Consider Whether Another Party's Material Should Be Sealed entered at 1:18 am on 9/1/2023;

- ECF No. 150, MOTION to Exclude the Expert Survey, Report, and Testimony of Rhonda Harper entered at 12:09 am on 9/16/2023;

- ECF No. 151, Request for Judicial Notice entered at 12:37 am on 9/16/2023;

- ECF No. 152, Administrative Motion to Consider Whether Another Party's Material Should Be Sealed entered at 12:53 am on 9/16/2023.

### 4. Plaintiff's Summary Judgment Opposition Cited To Non-Existent Exhibits, Demonstrating Gross Negligence

In ECF No. 195, Plaintiff's Opposition to Defendants second summary judgment motion, Plaintiff repeatedly cited to non-existent exhibits, as discussed in Defendants' Reply re summary judgment, ECF No. 199. Plaintiff, 54 days after Defendants had notified Plaintiff of its many errors, purported to file an "Errata," ECF No. 205, identifying 16 separate exhibit citation errors. Other courts have characterized similar filings as "grossly negligent." See Solar Sun Rings, Inc. v. Secard Pools, Inc., No. CVED14-2417 PSG (KKx), 2016 WL 6138280, at *1 (C.D. Cal. Jan. 7, 2016). Other cases have taken a dim view of such "Errata" and ordered them stricken. Relevant Group, LLC v. Nourmand, Case No. 2:19-cv-05019-ODW (KSx), 2022 WL 3096871 at *1 (N.D. Cal. May 17, 2022). Plaintiff's grossly negligent litigation practices make this case stand out from others and render the case exceptional.

### C. Awarding Attorneys' Fees Is Necessary To Deter Conduct Of The Type Plaintiff Engaged In And To Compensate Defendants

Deterrence and compensation are additional factors a court should consider when determining whether a case is exceptional. Octane Fitness, 134 S. Ct. at 1756 n.6 (court's "discretion [to award fees] should be exercised 'in light of' … the need in particular circumstances to advance considerations of compensation and deterrence" (citations omitted)); Sunearth, 839 F.3d at 1181 (same).

Regarding deterrence, an award of attorneys' fees here would send a strong message to other litigants tempted to assert rights in marks they do not have the right to enforce. Absent an award of attorneys' fees, attempts to bully smaller competitors with trademarks a party does not even own may be reduced to a mere business decision, as it appears to have been in this case. That is, Plaintiff's failure to investigate ownership, or even worse, its intentional attack on a much smaller competitor while knowing that it did not own the asserted trademark rights, could be a strategy that other litigants would use in the future if such conduct were not deterred by an attorneys' fee award.

Regarding compensation, especially for a company as small as Defendant that has made relatively miniscule

sales, *see* Exhibit F to the de Gyarfas Decl., the financial burden of this case has been extraordinary. Defendants should be compensated for having to have litigated this meritless case.

### D.      Defendants' Attorneys' Fees Are Reasonable

"District courts apply the lodestar method to determine a reasonable fee." <u>Kohler v. Eddie Bauer LLC</u>, 792 F. App'x 446, 448 (9th Cir. 2019). "The lodestar amount is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." <u>Id.</u> "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

#### 1.      The Billing Rates Were Reasonable

##### a.      Counsel Utilized Its Standard Rates For Its Experienced Team

The Supreme Court has reasoned that current market rates are the primary reference points for ascertaining rates that are reasonable. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984) (indicating that reasonable hourly rates are "the prevailing market rates in the relevant community"). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." <u>Camacho v. Bridgeport Fin., Inc.</u>, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). The relevant legal community is the forum district. <u>Gates</u>, 987 F.2d at 1405. Typically, "affidavits of the [party's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th Cir. 1990).

Considering the subject matter of the case and the skill and experience of Defendants' attorneys, the hourly rates of Defendants' attorneys are reasonable. Foley & Lardner LLP ("Foley") is a national law firm with renowned expertise in intellectual property litigation. Throughout the entire case, Foley maintained a leanly staffed team, initially including just two experienced intellectual property attorneys, and later adding another as the need arose. de Gyarfas Decl. ¶ 7. Lead counsel, Victor de Gyarfas, is a partner and veteran intellectual property litigator with 30 years of intellectual property experience. <u>Id.</u> at ¶¶ 7, 9 and Ex. A. Tiffany Sung is also an intellectual property litigator with six years of experience and assisted as an associate. <u>Id.</u> at ¶¶ 7, 11 & Ex. C. Later, the team added Laura Ganoza, a partner with 28 years of litigation experience, including significant trademark experience, making her particularly

well-suited for this case. Id. at ¶¶ 7, 10 & Ex. B.

Foley's hourly rates are as follows for the members of the litigation team (Id. at ¶¶ 9-11) :

| Attorney | Years of Experience | Title | 2021 Hourly | 2022 Hourly | 2023 Hourly | 2024 Hourly |
|----------|---------------------|-------|-------------|-------------|-------------|-------------|
| Victor de Gyarfas | 30 | Partner | $1,000 | $1,095 | $1,175 | $1,305 |
| Laura Ganoza | 28 | Partner | N/A | N/A | $950 | $1,050 |
| Tiffany Sung | 6 | Associate | N/A | $580 | $715 | $800 |

First, the rates set out in the table above are the normal billing rates Foley charges for its legal services in the community (de Gyarfas Decl. ¶¶ 9-11), and thus are evidence that the rates are reasonable. See Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 840 (9th Cir. 1982) ("Unless counsel is working outside his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal billing rate. Billing rates usually reflect, in at least a general way, counsel's reputation and status (i.e., as partner, associate, or law clerk)."); Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063, at *56 (C.D. Cal. Mar. 24, 2015)  ("At minimum the rate an attorney actually charges its client is a good starting to point because the actual rate that the attorney can command in the market is itself highly relevant proof of the prevailing community rate.") (cleaned up).). Foley sets its billing rates upon a particular lawyer's experience level and area of practice and conducts a review of standard billing rates every year to ensure that the firm's rates are competitive with rates charged by peer law firms. (de Gyarfas Decl. ¶ 4).

Further, these are the rates that the Defendants were actually billed at and timely paid, (de Gyarfas Decl. ¶ 8-11) thus showing that the billing rates are in line with the market rate. See Facebook, Inc. v. Power Ventures, Inc., No. 08-CV-05780-LHK, 2017 U.S. Dist. LEXIS 125541, at *24 (N.D. Cal. Aug. 8, 2017) ("The reasonableness of the requested rates is strongly supported by the fact that these are the rates that counsel billed to Facebook and that Facebook has already paid. … Thus, the fact that this is the rate that counsel actually charged Facebook 'provides a market-based cross-check' for the reasonableness of the fees.") (citing Nitsch v. DreamWorks Animation SKG Inc., 2017 U.S. Dist. LEXIS 86124, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017)).

      **b.** **The Rates Are Consistent With Rates Approved In N.D. Cal. Cases**

Defendants' attorneys' rates are also reasonable because courts in this District have approved similar rates for attorneys with similar experience. "Comparable fee awards by courts are competent evidence for determining the reasonableness of hourly rates." Dropbox, Inc. v. Thru Inc., No. 15-cv-01741-EMC, 2017 U.S. Dist. LEXIS 33325, at *13-14 (N.D. Cal. Mar. 8, 2017); see also Perfect 10, 2015 U.S. Dist. LEXIS 54063 at *45 ("To determine whether

a rate falls within the scope of 'prevailing market rates,' courts consider rates charged by other 'attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter' for '[] similar services by lawyers of reasonably comparable skill, experience and reputation.'") (citing Prison Legal News v. Schwarzenegger, 608 F.3d 446, 455 (9th Cir. 2010)).

Two years ago, the Northern District of California approved of rates similar or higher than those sought in this case. See Fleming v. Impax Labs. Inc., No. 16-cv-06557-HSG, 2022 U.S. Dist. LEXIS 125595, at *28 (N.D. Cal. July 15, 2022) (approving hourly rates ranging from $760 to $1,325 for partners and $895 to $1,150 for counsel); see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. March 17, 2017) (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates as reasonable in 2017). Defendants' attorneys' rates fall within these ranges. Thus, accounting for inflation and the increase in billing rates each year since 2017, Defendants' attorneys' rates are reasonable.

Many other older cases approved rates, which, taking inflation into account, are in line with the rates of Defendants' attorneys. See Schneider v. Chipotle Mexican Grill, Inc., 336 F.R.D. 588, 600-01 (N.D. Cal. Nov. 4, 2020) (finding rates between $425 and $695 for associates and up to $1,275 for partners reasonable in 2020). Nearly seven years ago, in 2017, a court in this District approved rates of "$870 and $1,200 per hour" for lead attorneys, rates of "$275 to $750" for associates, and rates of $290 or lower for paralegals. Nitsch v. DreamWorks Animation SKG Inc., 2017 U.S. Dist. LEXIS 86124, at *31-33 (N.D. Cal. June 5, 2017). See also, Hefler v. Wells Fargo & Co., No. 16-CV-05479, 2018 U.S. Dist. LEXIS 213045, at *39 (N.D. Cal. Decl. 18, 2018) (finding rates ranging from $650 to $1,250 for partners or senior counsel and from $400 to $650 for associates as reasonable in 2018).

### c.   The Rates Are Consistent With The AIPLA Survey Rates

Further, Foley's hourly rates are consistent with the hourly rates of intellectual property lawyers in the region, as set out in a survey conducted by the American Intellectual Property Law Association (AIPLA). Courts have relied on survey data, and specifically, the AIPLA economic survey, in assessing whether billing rates are reasonable. See Amazon.com, Inc. v. PersonalWeb Techs., LLC (In re PersonalWeb Techs., LLC), No. 18-md-02834-BLF, 2023 U.S. Dist. LEXIS 223874, at *52-54 (N.D. Cal. Decl. 15, 2023) (comparing attorney billing rates to the "average hourly billing rate in 2020 for a partner-track attorney at a private firm in the San Francisco consolidated metropolitan statistical area and finding them reasonable); Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., No. CV 08-7587 R,

2009 U.S. Dist. LEXIS 132872, 2009 WL 9137315, at *3 (C.D. Cal. Decl. 14, 2009) ("In intellectual property cases, federal courts routinely rely on the [AIPLA] economic survey results published every other year."). The 2023 AIPLA economic survey shows that the average hourly billing rate in 2022 for an equity partner at a private firm in the San Francisco consolidated metropolitan statistical area ("CMSA") was $993 and the third quartile rate was $1,546. See Ex. E at I-34. Mr. de Gyarfas's hourly rates for 2021-2024 and Ms. Ganoza's hourly rates for 2023-2024 all fall within that range. de Gyarfas Decl. ¶¶ 9-10. The 2023 AIPLA economic survey also shows that the average hourly billing rate in 2022 for a partner-track attorney at a private firm in the West was $680 and the third quartile range was $1,266. See Ex. E at I-47. Ms. Sung's hourly rate for 2022 falls below the average billing rate for 2022 and her hourly rates for 2023-2024 fall within the third quartile range for 2022. de Gyarfas Decl. ¶ 11. Thus, accounting for inflation and the increase in billing rates every year, Defendants' attorneys' billing rates are consistent with the rates in the 2023 AIPLA economic survey and are thus reasonable.

### 2. The Hours Expended and Work Performed Was Reasonable

Plaintiff brought this case against Defendants, directly threatening Defendants' right to use the BLUE BREW name and websites and seeking to cancel their valuable trademark. ECF No. 1. Although Plaintiff dropped certain claims related to cybersquatting and dilution, it unreasonably maintained its claims for trademark infringement, trade dress infringement, and unfair competition, even when it could not meet its burden to show that it had standing to bring those claims. For its successful and complete defense of those claims, over a hard fought nearly three-year litigation, Defendants now seek reimbursement of $1,148,144.50 for 1,149.40 hours of attorney work. The total hours expended by Defendants' counsel over a nearly three-year period are reasonable.

First, the total amount of fees Defendants seek is less than or similar to fee awards in other Lanham Act cases. See, e.g., Cairns v. Franklin Mint Co., 292 F.3d 1139, 1159 (9th Cir. 2002) (affirming award of $2,308,000 in attorneys' fees on Lanham Act and other claims); Dropbox, 2017 U.S. Dist. LEXIS 33325 at *23-24 (awarding $1,761,781.50 in attorneys' fees on Lanham Act claims resolved on summary judgment); Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70, 77 (2d Cir. 1986) (affirming award of $1,142,545.70 in fees, where Plaintiff did not own trademark rights it asserted in lawsuit).

Further, Defendants' counsel was judicious with their time, leanly staffed the litigation team, and seeks reimbursement for only worked performed by attorneys. de Gyarfas Decl. ¶¶ 5, 7. Approximately 91% of Defendants' fees for which it seeks compensation were for the work of just two intellectual property attorneys, Victor de Gyarfas

and Tiffany Sung. Id. ¶ 8. Only when the needs of the case demanded it, was additional staffing by the experienced trademark litigator Laura Ganoza utilized. Id. at ¶ 7. Defendants attempted to resolve the case early on through mediation and sought to limit hours spent on discovery until it was determined that mediation would be unsuccessful. Only then did Defendants fully dive into discovery. Id. ¶ 18-22. Defendants also do not seek reimbursement for the work performed by paralegals on this case. Id. ¶ 5.

Most of Defendants' attorneys' fees were incurred during the discovery and summary judgment phases (id. ¶ 21-43, Ex. D), both of which were prolonged due to Plaintiff's actions. For example, Plaintiff made baseless, boilerplate objections to discovery requests, necessitating deficiency letters and correspondence back and forth (see, e.g., discovery letters detailing Plaintiff's nonsensical positions, Exs. J, K). Further, during expert discovery, Plaintiff initially chose to depose Defendants' survey expert on only one of her four reports, even though the District Court had not yet ruled on Plaintiff's Motion to Strike the remaining three rebuttal reports (ECF No. 123 at 3, Joint Case Management Statement), necessitating a subsequent deposition and causing disruption and additional motion practice (ECF No. 163 at 7). By intentionally failing to address Defendants' rebuttal expert reports during the discovery period and during its initial summary judgment motion, and instead choosing to pursue baseless and ultimately losing motions to exclude Defendants' survey expert, Plaintiff prolonged this litigation and caused Defendants to incur a slew of unnecessary fees and expenses. Plaintiff's poor litigation decisions caused the Court to vacate the first round of summary judgment briefing to allow Plaintiff to depose Defendants' expert on the three reports that the Court ultimately found timely and admissible. Id. Defendants were required to file two motions for summary judgment (ECF Nos. 135 and 184), two oppositions to Plaintiff's motions for summary judgment (ECF Nos. 157 and 191).

Finally, Defendants have timely paid all of their bills and have done so since the start of the case. de Gyarfas Decl. ¶ 8. Thus, Defendants too considered the time spent by its counsel on this case to be reasonable and as falling within existing commercial and case expectations. See Stonebrae L.P. v. Toll Bros., 2011 WL 1334444, *6 (N.D. Cal. 2011) (the presumption that fees were reasonable is "particularly forceful" where "the fees were billed to and actually paid by the [client] during the course of the litigation, the relationship between counsel and the [client] was a valid business relationship, and [client] exercise[d] business judgment in retaining and paying counsel"); Sazerac Company, Inc. v. Fetzer Vineyards, Inc., 2017 WL 6059271, *11 (N.D. Cal. 2017).

The total number of hours Defendants' counsel billed for this case for legal services should therefore be considered reasonable. Accordingly, because Defendants' attorneys' rates and hours were reasonable, Defendants

should be awarded all fees and non-taxable costs sought.

## VIII.  **DEFENDANTS SHOULD BE AWARDED THEIR NON-TAXABLE COSTS**

"[T]he Ninth Circuit has specifically stated that non-taxable costs are recoverable as part of a fee award under the Lanham Act." Dropbox, 2017 U.S. Dist. LEXIS 33325 at *18 (awarding discovery vendor fees, expert witness fees and deposition/hearing costs totaling $419,610.41). Recoverable costs need only be "reasonably incurred." Id. at *5. See also ABC Water LLC v. APLus Water, LLC, No. 2:18-cv-04851-SPL, 2020 WL 8838650, at * (D. Ariz. Oct. 5, 2020) ("Attorneys' fees under the Lanham Act may also include reasonable costs that the party cannot recover as the prevailing party, such as legal research, deposition expenses, and expert witness fees as long as some detail or itemization is provided so the district court can consider the reasonableness of such costs."). Mediator fees are also recoverable as non-taxable costs. Wyatt Tech. Corp. v. Malvern Instruments, Incorp., 2010 WL 11404472, at *2 (C.D. Cal. June 17, 2010) (awarding non-taxable costs like mediator fees because the Lanham Act fees provisions "include recovery of nontaxable expenses if those expenses would normally be charged to the client").

Here, Defendants seek to recover non-taxable costs that they incurred and paid: (1) to their expert witness, (2) for mediator fees, (3) for Westlaw legal research fees, (4) to their e-discovery hosting service, and (5) for depositions, including travel costs. A chart summarizing the costs for which reimbursement is requested is shown here:

| Description | Amount | de Gyarfas Decl. ¶ |
| --- | --- | --- |
| Expert Witness Fees – To Rhonda Harper for conducting surveys and producing expert reports and attending depositions | $143,550.00 | 54-55 |
| Mediator Fees | $12,682.50 | 56 |
| Westlaw legal research fees | $16,427.00 | 57 |
| Discovery Vendor Fees | $6,300.00 | 58 |
| Non-Transcript Related Deposition Costs | $2,077.65 | 59 |
| **Total Non-Taxable Costs** | **$181,037.15** | |

All of these non-taxable costs were necessarily and reasonably incurred in defense of Plaintiff's claims and are substantiated in the accompanying de Gyarfas declaration (¶¶ 53-58) and exhibits thereto. Accordingly, they too should be awarded to Defendants.[3]

## IX.  **CONCLUSION**

For all the foregoing reasons, Defendants should be awarded their attorneys' fees in the amount of $1,148,144.50 and non-taxable costs in the amount of $181,037.15.

---

[3] To the extent any taxable costs contained in Defendants' Bill of Costs are not awarded, Defendants request that they be awarded as non-taxable costs as part of their reasonable attorneys' fees and expenses.

Dated: May 21, 2024                    /s/ Victor de Gyarfas
                                       Victor de Gyarfas
                                       Attorneys for Defendants HUI CHUAN LIAO and SOUTHERN
                                       TECHNOLOGIES, LLC

4886-6329-1583.12